356 So.2d 86 (1978)
Janis Phelps Alfonso, wife of and Vernon ALFONSO, and Sandra Serigne Alfonso, wife of and Ralph Alfonso
v.
MARKET FACILITIES OF HOUSTON, INCORPORATED and Money Hill Plantation, Incorporated.
No. 11753.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
Rehearing Denied March 20, 1978.
Writ Refused May 5, 1978.
*87 Edwin R. Pillault, Jr., New Orleans, for plaintiffs-appellants.
France W. Watts, III, Richard W. Watts, Franklinton, for defendants-appellees.
Before LANDRY, SARTAIN, and ELLIS, JJ.
ELLIS, Judge.
This is a suit for damages for personal injuries suffered by Janis Phelps Alfonso and Sandra Serigne Alfonso when they fell or were thrown from the horses which they were riding at Money Hill Plantation. Plaintiffs are the two injured parties and their husbands, Vernon Alfonso and Ralph Alfonso. Defendants are Money Hill Plantation, Inc. and Market Facilities of Houston, Inc., its insurer. After trial on the merits, judgment was rendered dismissing plaintiffs' suit and they have appealed.
On July 27, 1974, Janis Phelps Alfonso and Sandra Serigne Alfonso, together with their husbands and children, and other members of their family, were on a picnic at Money Hill Plantation, a recreation area operated by the defendant. Among the facilities offered by the defendant is a trail ride, in which, for a fee, patrons are conducted on a horseback ride over a trail of about a mile in length. The riders are conducted by two employees of the defendant, who lead and follow the patrons, who ride in single file along the trail. The horses used are trained to remain in single file, and to follow the horse ahead of them. The rides are made at a walk, and patrons are cautioned not to get out of line, not to get too close to the horse ahead, and not to attempt to go faster than a walk.
At the time of the accidents in this case, the attendants who conducted the rides also collected the fees from the patrons. Before anyone was permitted to take the ride, he was required to sign a "Waiver and Hold Harmless Agreement", by virtue of which he assumed the risks inherent in horseback riding. Usually, the waiver was identified as such, but not in any way explained to the patrons. Janis Alfonso signed the agreement, and also signed it on behalf of Sandra and other members of the family who made the trail ride. Since Janis had no recollection of any of the events leading up to the trail ride, or of what happened during or immediately thereafter, she had no recollection of signing the agreement. She did identify her signature thereon, and stated that she must have known what she was doing when she signed it. Sandra testified that Janis was authorized to sign the agreement on her behalf.
July 27, 1974, was characterized by the witnesses as a typical midsummer day in St. Tammany Parish. There had been some showers earlier in the day, but it was not raining at the time the trail ride began, and the sky was partly cloudy. At a point when the ride was one-half to three-quarters completed, it began to rain. One of the attendants rode ahead to open the gate of the corral where the horses were kept. The other attendant, riding the lead horse, led the riders back to the coral. Just after they entered the coral, there was a sudden bolt of lightning, followed by a clap of thunder. The horses carrying Janis and Sandra bucked or shied, throwing them to the ground and causing the injuries complained of herein. Neither Janis nor Sandra were experienced riders, but each had made the trail ride on one previous occasion.
Plaintiffs seek recovery on two bases. First, they claim that defendants are liable under the provisions of Articles 2317 and 2321 of the Civil Code, and, second, that the trail ride was negligently conducted by the defendants.
Articles 2317 and 2321 of the Civil Code provide as follows:
"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
* * * * * *
"Art. 2321. The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, *88 or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
In Holland v. Buckley, 305 So.2d 113 (La. 1974), the court said:
"The issue before us is: When an innocent bystander is bitten by a dog, who shall bear the damages so caused? The bystander passing on the street, who did not provoke the attack? Or the owner of the dog, who created the risk by letting the dog go loose? "
It further said:
"We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
* * * * * *
"The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure.
"Article 2321 places the master of the animal under a legal obligation to keep his animal under such guard that it does no damage to others. A fault in this obligation to control the animal and guard others from harm by it entitles the victim to recover damages thereby sustained."
In Loescher v. Parr, 324 So.2d 441 (La. 1975), the court said:
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
"The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
"This jurisprudence recognizes that the injured person must prove the vice (i. e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
"The legal fault thus arising from our code provisions has sometimes been referred to as strict liability."
In refusing writs in Harrington v. Upchurch, 337 So.2d 222 (La.1976), the court said this:
". . . Under the facts shown, the presence of the cow in open-range highway did not create an unreasonable risk *89 of injury to others; therefore, the owner is shown to be exonerated from fault."
In two recent dog bite cases, this circuit has relieved the owner of responsibility because the offending animals were secured on the owner's premises, and the parties injured were on the premises against the wishes or instructions of the owner. Dotson v. Continental Insurance Co., 322 So.2d 284 (La.App. 1st Cir. 1975); Parks v. Paola, 349 So.2d 896 (La.App. 1st Cir. 1977).
In a recent third circuit case, a boy employed to exercise horses, was thrown by one of the horses and injured. The court held that the rule of Holland v. Buckley, supra, was not applicable, since the animal was not in the custody of the owner, but was in fact under the care, custody and control of the injured party. The case was then decided on the basis of conventional negligence principles. Fontenot v. Soileau, 336 So.2d 1006 (La.App. 3rd Cir. 1976).
From the foregoing, we gather that, in order to hold the owner of an animal strictly liable for damage to another done by the animal, there must be a domestic animal, which is actually or constructively under the control of the owner, or which he has an obligation to restrain, the presence of which causes an unreasonable risk of harm to others and which injures an innocent third party.
In this case, both Janis and Sandra were active participants in the trail ride, and cannot be considered as innocent third parties. Further, they were in control of the two horses at the time of the accident. They are therefore not entitled to recover under the strict liability provisions of the Code.
The only act of negligence charged to defendant is that the trail ride was taken out at a time when it was likely that there would be thunder and lightning, which might cause the horses to bolt or buck. Eric Schindler, who was in charge of the trail ride, said that he saw some black clouds on the horizon, but was of the opinion that the trail ride would be completed before the clouds would arrive in the vicinity. He testified that it was not unusual for the trail riders to get caught in the rain, and he anticipated that this was the worst that could happen on this occasion. He further stated that he had never been on a trail ride when there was lightning and thunder, and that this was the only case of patrons being thrown from a horse during a trail ride in his experience at Money Hill.
The trial judge found as a matter of fact that the lightning and thunder caused the horses to bolt and throw the plaintiffs to the ground. We find no manifest error in this factual conclusion. The question is whether or not this circumstance renders defendant legally liable for plaintiffs' injuries.
It is clear from the record that many trail rides had been made under similar circumstances, and that they had been caught in the rain on occasion, but that there had been no lightning or thunder. We further note that the two horses on which Janis and Sandra were riding were considered to be among the most stable and dependable horses in the herd, and were often used to carry double. There is no evidence that any of the other horses acted up as a result of the lightning and thunder.
Operators of recreational facilities are not the insurers of the safety of their patrons, but must conduct their operations in such a way as to not expose the patrons to an unreasonable risk of harm, considering the nature of the facilities provided. It is also true that one who voluntarily utilizes such facilities assumes the reasonably foreseeable risks which are inherent in the use thereof. Rosenberger v. Central La. Dist. Livestock Show, Inc., 312 So.2d 300 (La. 1975); Lefort v. Ponchatoula Beach Development Corp., 292 So.2d 354 (La.App. 1st Cir. 1974); Richmond v. Employers Fire Insurance Company, 298 So.2d 118 (La.App. 1st Cir. 1974).
Considering the foregoing principles, we are of the opinion that no negligence on the part of the defendants has been shown. We fail to see that defendants exposed the plaintiffs to any unreasonable risk of harm *90 which is not inherent in horseback riding. Defendant made every effort to see that the horses used were gentle and trained to walk in line during the trail ride. No trail rides were started when it was raining, or when the weather was threatening. Patrons were warned of the chance of rain, and were instructed in how to handle the horses during the ride. The testimony is that it is in the nature of horses to shy at sudden loud noises. The record preponderates to the effect that there was no thunder prior to the clap which startled the horses, and this took place after the horses were in the corral. Barring the application of strict liability, we find no basis for holding defendant responsible for plaintiffs' injuries.
The judgment appealed from is therefore affirmed at plaintiffs' cost.
AFFIRMED.