368 So.2d 810 (1979)
Trudy M. DANIEL, Plaintiff-Appellant,
v.
CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, ANDOVER, MASS., et al., Defendants-Appellants.
No. 13807.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1979.
*811 Love, Rigby, Dehan, Love & McDaniel by Kenneth Rigby, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for defendants-appellants, Cambridge Mut. Fire Ins. Co.
Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Shreveport, for defendant-appellee, United States Fire Ins. Co.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
Plaintiff, Trudy Daniel, was on a trail ride with her employer, Don Miller, and Miller's eleven year old son, Eric. All three were experienced, capable riders. The three horses owned by Miller were well-trained, *812 well-disciplined and of good dispositions. The trail, on which they had ridden together many times, crossed a dirt road. Miller, in the lead, rode his horse across the road. Eric, riding an Arabian mare named Whiskey, stopped close to the road to let a pick-up truck pass by. Miss Daniel, riding an Arabian stallion named Raffhelima, which she had ridden many times, stopped about nine feet behind Eric and slightly to his left. After the truck passed, Eric's horse shied and backed up quickly under the head and neck of Miss Daniel's horse. Whiskey may have shied because of the passing truck or because of a red truck door leaning against a nearby tree or for some other unknown reason. Eric took hold of the reins and urged the horse forward with his legs, which is the proper reaction when a horse shies. Miss Daniel's horse reared up, she fell off, and the horse fell on top of her, causing severe injuries to her face.
Plaintiff brought suit for damages against Miller and his liability insurers alleging negligence and strict liability under LSA-C.C. Arts. 2318 and 2321. Plaintiff also sought recovery of penalties for the arbitrary failure of the insurance company to pay medical expenses under the $2500 medical payment provisions of its policy. Defendants denied negligence, pled contributory negligence and assumption of risk as affirmative defenses, and denied the allegation of unreasonable failure to pay medical expenses. After trial, the district court in a studious written opinion found no negligence on the part of Miller or Eric, but held there was strict liability under LSA-C.C. Art. 2321 and Holland v. Buckley, 305 So.2d 113 (La.1974). General damages of $22,500 and special damages of $3,347.61 were awarded. Neither the trial court's opinion nor the judgment dealt with the medical payment penalty issue. After trial the insurance company paid the $2500 medical expenses, plus interest, without prejudice to plaintiff's claim for penalties and attorney's fees.
Defendants appealed, specifying that the district court erred in finding liability. Plaintiff also appealed, specifying that the trial court erred in not awarding penalties for failure to timely pay the medical expenses.
For reasons expressed in this opinion, we reverse the judgment of the district court awarding damages. We render judgment in favor of plaintiff for penalties and attorney's fees for arbitrary failure to pay medical payments due under the policy.
The principal basis for recovery relied on by plaintiff is LSA-C.C. Art. 2321[1] imposing strict liability on the owner of a domesticated animal for the damage caused by the animal, as interpreted by Holland v. Buckley, supra, and subsequent cases. A secondary basis for recovery urged by plaintiff is LSA-C.C. Art. 2318[2], imposing strict liability on a parent for damages caused by the delict of his minor child, as interpreted by Turner v. Bucher, 308 So.2d 270 (La. 1975). The principal defense urged by defendant is assumption of the risk.
In discussing the issue presented by this case, it should first be noted that the trial court was eminently correct in its finding that none of the parties involved, Miller, Eric or Miss Daniel, were guilty of any negligence. Although plaintiff argues that Eric was negligent in failing to be alert and in failing to keep his horse under control, the evidence is convincing that he did all that a competent rider could be expected to do when the horse unexpectedly shied. There is no contention that any of the participants *813 were negligent in being too close to the road, which they and other riders regularly crossed in the presence of slow moving traffic without incident.
Holland v. Buckley held that the correct interpretation of Civil Code Article 2321 is as follows:
When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
The three exculpating defenses have been repeated in subsequent strict liability cases. Turner v. Bucher, supra, and Loescher v. Parr, 324 So.2d 441 (La.1975).
Plaintiff urges, and the trial court held, that none of the three defenses were established in this case. There was no fault of a third person for whom the owner of the horses was not responsible. There was no fortuitous event. The plaintiff was not at fault in the sense of having been negligent in any way. Hence, liability on the part of the owner of the horses.
This analysis and application of Article 2321 and Holland v. Buckley is overly simplistic. The underlying rationale of the duty imposed by Article 2321 is explained in Holland and in the later cases. In Holland the court said:
The underlying reasons for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure.
Article 2321 places the master of the animal under a legal obligation to keep his animal under such guard that it does no damage to others. A fault in this obligation to control the animal and guard others from harm by it entitles the victim to recover damages thereby sustained.
. . . Under our present holding, the owner can exculpate himself from the fault of having his animal hurt someone only by proving that the harm resulted from some independent cause not imputable to the defendant, (emphasis supplied)
Loescher explained:
The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others, (emphasis supplied).
Animals, even domesticated ones, present a risk of injury or harm. It is the duty of an owner of a domesticated animal to protect others from harm by his animal. Thus, when a person is harmed by an animal, the owner is presumed to have breached his duty and is presumed to be at fault.
The owner's liability is strict, but not absolute. There are defenses. The owner may be relieved of liability if the harm is caused by (1) the fault of the victim (2) the fault of a third person, or (3) a fortuitous event. If the harm resulted from an independent cause not imputable to the owner of the animal he is exculpated from fault. The independent cause must be a substantial factor in bringing about the harm.
Assumption of risk has been recognized as a defense in strict liability cases. It was recognized in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), which preceded Holland v. Buckley and was the first of the four Supreme *814 Court cases clearly enunciating that there may be fault without negligence. In Langlois, an ultra hazardous activity case, the court held:
. . . Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk. There is some authority for rejecting assumption of risk in cases which do not involve negligence, but the majority view is that assumption of risk is a defense to strict liability. A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risk and embraces the danger cannot recover damages for injury which may occur.
Assumption of risk has been recognized as a defense in several strict liability cases involving horseback riding decided by the Courts of Appeal after Holland v. Buckley. Stevens v. Zurich, Inc. Co., 357 So.2d 11, La.App. 3rd Cir. 1978, Fontenot v. Soileau, 336 So.2d 1006 (La.App. 3rd Cir. 1976); Alfonso v. Market Facilities of Houston, Inc., 356 So.2d 86 (La.App. 1st Cir. 1978) writ den. 357 So.2d 1169 (La.1978).
In Stevens the plaintiff remounted a horse which had thrown him and was again thrown, and injured. Recovery against the horse owner's insurer was denied under Holland v. Buckley because the accident was caused by the fault of the victim in that he assumed the risk of injury.
In Fontenot, plaintiff was employed by defendant to exercise defendant's horses. He was injured when the horse he was riding began to buck and threw him to the ground. The court denied recovery under Holland v. Buckley, holding that plaintiff was a consenting victim and not an innocent bystander, that the horse was under the care, custody and control of the victim and not the owner, and that plaintiff assumed the risk of exactly what occurred when he accepted employment.
In Alfonso, plaintiffs were injured while on a trail ride when they were thrown from rented horses which were frightened by a bolt of lightning and a clap of thunder. Recovery under strict liability was denied, with the court holding that since plaintiffs were active participants in the trail ride, they could not be considered as innocent third parties. Further, they were in control of the horses at the time of the accident.
The two classic tests of assumption of risk, recognized in Langlois, are present here: (1) there was full knowledge and appreciation of the danger plaintiff was an experienced rider with knowledge and appreciation of the danger that even well-trained horses may shy or rear, and (2) there was a voluntary encountering of the dangerplaintiff voluntarily exposed herself to the risk and embraced the danger by participating in the trail ride with others. She assumed the risk of the horses shying, rearing and causing injury.
If it is necessary to fit assumption of risk into one of the three defenses listed in the triology of strict liability cases, it can be fitted into "fault of the victim". If fault of the owner does not require negligence, then the fault of the victim which will operate as a bar to recovery, or will relieve the owner of fault, does not necessarily require negligence. If the owner is at fault simply because he exposes others to risk of harm by his animal, then others are at fault when they knowingly and voluntarily expose themselves to the same risk.
The harm here was caused as much by the victim's fault (exposing herself to the horses) as by the owner's fault (exposing the victim to the horses). Her fault was a substantial contributing factor in causing the harm.
Part of the rationale of strict liability is that the responsibility should fall on the risk-creator rather than on an innocent victim. In this case plaintiff's conduct in voluntarily participating in a trail ride on a horse with other horses and riders created the risk of harm at least as much as did Miller's conduct as owner of the horses in *815 making them available for that purpose. Plaintiff was not an innocent bystander or victim.
Loescher makes it clear that the animal, person or thing for which one is responsible must pose an "unreasonable risk of harm". A domestic animal poses such a risk to innocent bystanders. However, where the person harmed is not an innocent bystander but is acting in some manner related to the animal, an inquiry must be made into the degree of the risk of harm. Making that inquiry in this case leads to the conclusion that the well-trained horses with no dangerous propensities ridden by experienced and capable riders did not present an unreasonable risk of harm to the plaintiff who was herself an experienced rider and who voluntarily participated in the trail ride. There was a risk of harm, but not an unreasonable one.
Stated in terms of duty-risk, there is no breach of duty to protect others from the risk of harm by an animal if the other person voluntarily, knowingly and purposefully exposes himself to and assumes that same risk. Stated another way, there is no duty owed by the owner of an animal to one who voluntarily assumes the risk of injury by the animal.
Numerous cases involving sporting activities, while not dealing with strict liability situations, have recognized the principle that persons who participate in such activities assume the risks inherent in such activities. Bourque v. Duplechin, 331 So.2d 40 (La.App. 3rd Cir. 1976) writ ref. 334 So.2d 210 (La.1976); Carroll v. Aetna Casualty & Surety Company, 301 So.2d 406 (La.App. 2nd Cir. 1974); Richmond v. Employer's Fire Insurance Company, 298 So.2d 118, (La.App. 1st Cir. 1974) writ ref. 302 So.2d 18 (La.1974); and Hyland v. Durr, 212 So.2d 158, (La.App. 4th Cir. 1968) writ ref. 252 La. 886, 214 So.2d 715 (1968).
Plaintiff's alternative argument that defendant is responsible for the delict of his minor son under Article 2318 and Turner v. Bucher has already been answered by the finding that the son's conduct was not delictual, deficient or sub-standard in any respect. Turner does not hold, and plaintiff does not contend, that a parent is responsible for harm to which a minor's nondelictual conduct might contribute.
Defendant is exculpated from fault and liability by the fault of the victim, that is, her assumption of the risk. The judgment of the district court must be reversed and recovery of damages denied.
The remaining issue in the case is whether plaintiff is entitled to penalties and attorney's fees under LSA-R.S. 22:658 because of the insurance company's arbitrary and unreasonable failure to pay benefits under the medical payments provisions of its policy which had a limit of $2,500. The accident occurred July 13, 1976. Miss Daniel testified she made repeated demand, written and oral, on the insurance adjuster for payment of her medical expenses, to no avail. In evidence are letters to this effect written by her to the adjuster in August and October, 1976. Suit was filed demanding payment in July, 1977. Payment was not made until after trial and after judgment in September, 1978.
The insurance company's only excuse for its failure to pay is that it was under the impression plaintiff preferred to settle the entire case at one time. Plaintiff, a legal secretary and paralegal employed by Miller, handled the case in proper person through the filing of suit. She conceded she was unsure about how to handle this part of her claim separate from her liability claim. Still, the evidence is clear that she expected payment, submitted all information the company needed to effect payment, and was told the medical expenses would be paid, but payment was not made until after trial more than two years after the accident and the bulk of the expenses were incurred. The evidence does not disclose that payment was ever tendered or that appropriate release or receipt forms were presented to plaintiff.
The failure to pay within 60 days was arbitrary, capricious and without probable cause, entitling plaintiff to damages of 12% of the $2,500 due, or $300, together with *816 reasonable attorney's fees. The legal work connected with this portion of plaintiff's claim was not great, but the claim was urged at trial, evidence taken, and urged again on appeal. The fee is fixed at $500.
For the reasons assigned the judgment of the district court against Don Miller and Cambridge Mutual Fire Insurance Company is reversed and set aside. Judgment is rendered in favor of plaintiff, Trudy Margo Daniel, and against defendant, Cambridge Mutual Fire Insurance Company, in the sum of $800, together with legal interest from date of judicial demand until paid. The costs of these proceedings, including the costs of appeal, are assessed one-half to plaintiff and one-half to defendant Cambridge Mutual Fire Insurance Company.
Reversed and rendered.
NOTES
[1] C.C. Art. 2321: The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment.
[2] C.C. Art. 2318: The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.

The same responsibility attaches to the tutors of minors.