**Louis J. RODRIGUE, Jr.,**
**Plaintiff-Appellant,**

v.

**DIXILYN CORPORATION,**
**Defendant-Appellee,**

**Placid Oil Company, Defendant.**

**No. 78–2654.**

United States Court of Appeals,
Fifth Circuit.

July 3, 1980.

Rehearing Denied Aug. 20, 1980.

Carl J. Schumacher, Jr., New Orleans, La., for plaintiff-appellant.

Peter L. Hilbert, John E. Galloway, New Orleans, La., for defendant-appellee.

Before WISDOM, FAY, and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Louis J. Rodrigue, Jr., was injured while working offshore when he fell through a hole in a drilling rig owned by the defendant Dixilyn Corporation. He sues Dixilyn, urging both negligence and strict liability as theories of recovery. The jury found the hole in Dixilyn's rig to be an unsafe and dangerous condition and, addi-

tionally, found both plaintiff and defendant to be negligent. In accord with jury instructions which had indicated that contributory negligence on the part of the plaintiff that proximately caused his injury would relieve the defendant under *both* negligence and strict liability theories of liability, judgment was rendered for the defendant Dixilyn. On appeal, the plaintiff argues that the jury was erroneously instructed that under Louisiana law contributory negligence would be a defense to strict liability for damage occasioned by a defective thing under Civil Code Article 2317. We agree with the plaintiff's contention, and we therefore reverse and remand.

## I

The accident occurred about 1:00 a. m. on a level of Dixilyn's drilling rig that the day before had been transferred to a drilling platform owned by another company (Placid). The plaintiff Rodrigue, an employee of the owner (McDermott) of a drilling crane assisting in the operation, fell though a small (3′ × 4′) unguarded hole cut out in the walkway grating around the large center hole used for the drilling pipe.[1] He suffered injuries when he fell to the floor of the next level. Rodrigue, who had come on duty at 10:30 p. m., had not previously had the opportunity to observe the area. That the opening through the floor was unusual and not-to-be-expected is partially corroborated by the circumstance that, immediately after Rodrigue fell through it, a co-worker also fell into it while using the walkway.

(Fortunately, the latter caught the edges of the hole and was able to avoid falling to the deck below.) The jury finding that the open hatch or hole created a dangerous condition is clearly supported by the evidence.

At the time of the accident, the floor was in darkened or (as the district court's questioning educed) semi-lighted condition. Dixilyn's primary defense as to any strict liability for damages resulting from Rodrigue's fall is that Rodrigue was contributorily negligent in proceeding to work in an area that was not illuminated.

■ Evidence in the record may support the jury finding that Rodrigue himself was contributorily negligent (and thus barred from recovery)—e. g., he proceeded on the walkway despite the lack of illumination, or with possibly insufficient care under the circumstances of inadequate illumination. Thus, if contributory negligence[2] *were* a bar to recovery, we might be required to affirm the denial of recovery. On the other hand, if instead only Rodrigue's assumption of the risk[3] will defeat his recovery, Rodrigue should have recovered under the findings of the jury, since the facts reflected by the record do not show any basis for Rodrigue's subjective knowledge of or appreciation of the risk so as to constitute his assumption of it. As summarized by Louisiana's Professor Crowe: "The essence of assumption of the risk is twofold: first, knowledge and appreciation of a danger, and second, a voluntary encountering of it.

1. In the discovery depositions it is indicated that the hole in the walkway had been cut for purposes of installing a stairway to the level below. However, when the plaintiff fell through the hole, no stairway had been installed, and there was no hatch or warning to protect pedestrians from the risk of not noticing it and falling through.

2. See *Smolinski v. Taulli*, 276 So.2d 286, 290 (La.1973):

Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. . . . The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under the circumstances.

3. See *Prestenbach v. Sentry Insurance Co.*, 340 So.2d 1331, 1335 (La.1976):

In order for a plaintiff to assume a risk, he must knowingly and voluntarily encounter the risk which causes his injury. . . . "Knowledge" is the mainstay of this defense, and it must be proved by a preponderance of the evidence. . . . [F]or purposes of a knowing assumption of risk, we impute knowledge to a plaintiff, not because he was in a position to make certain *observations*, but only when he actually makes those observations and, from them, should reasonably have known that a risk was involved.

The essence of contributory negligence is simply carelessness." Crowe, The Anatomy of a Tort, 22 Loyola (La.) L.Rev. 903, 915 (1976). See also F. Stone, 12 Louisiana Civil Law Treatise: Tort Doctrine, Section 51 (1977).

## II

The trial judge instructed the jury that an owner-custodian of a thing may be held liable for damage caused by a defect in the thing, despite the absence of negligence or intent. According to the judge, "[t]he liability arises from [the custodian's] legal relationship to the object, whose defect created an unreasonable risk of injury to others." Upon concluding his instructions on possible bases of liability, the judge broached the subject of defenses: "If you find that Dixilyn was either negligent in the breach of its duty or *at fault as the custodian of the rig*, . . . it is necessary for you to consider the defense of Dixilyn that the plaintiff himself was guilty of contributory negligence. . . . In a case of this kind proof by the defendant by a preponderance of the evidence of *any negligence* on the part of the plaintiff which was a proximate cause of the accident bars the plaintiff's recovery as a matter of law, *even though the defendant* may also be found to have been negligent or *at fault as the custodian of the rig* in question." (Emphasis added.)

The plaintiff did not object to these instructions at trial, but he now claims that they are incorrect statements of the Louisiana law insofar as they indicate that contributory negligence would exonerate a defendant from strict liability for damage caused by a defect of a thing for which he

was responsible. The plaintiff asks the court to apply the plain error doctrine to permit him to hurdle the Rule 51 barrier to such belated objection to the instructions.

On several occasions this court has reversed on the basis of erroneous jury instructions that without objection had been given at trial. *Jamison Co., Inc. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976); *Industrial Development Board of Town of Section, Ala. v. Fuqua Industries, Inc.*, 523 F.2d 1226 (5th Cir. 1975); *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969); *Chagas v. Berry*, 369 F.2d 637 (5th Cir. 1966), *cert. denied*, 389 U.S. 872, 88 S.Ct. 161, 19 L.Ed.2d 154 (1967); *Mondshine v. Short*, 196 F.2d 606 (5th Cir. 1952); *Dowell, Inc. v. Jowers*, 166 F.2d 214 (5th Cir. 1948); *see generally*, 9 C. Wright and A. Miller, Federal Practice & Procedure § 2558, p. 672 (1971). In each case, we have been unwilling to perpetuate, by reason of the Rule 51 [4] contemporaneous objection requirement, a miscarriage of justice resulting from an instruction based on fundamental error; we therefore invoked the plain error doctrine to correct the mistake made by court and counsel below.

The doctrine is not a routine by-pass to Rule 51, however. The criterion for application of this doctrine is "certainly not whether [this] court approves or does not disapprove the results of the case." *Sheppard Federal Credit Union v. Palmer*, 408 F.2d at 1371. Plain error is found, however, if "the deficient charge is likely responsible for an incorrect verdict which in itself *creates a substantial injustice*." *Jamison Co., Inc., v. Westvaco Corp.*, 526 F.2d at 933.[5]

4. Federal Rule of Civil Procedure 51 provides:
   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to con-

sider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

5. The plain error rule may apply in such circumstances, even if an instruction requested by the now-complaining party (but not given) shared the same mistaken legal assumption. *Wirtz v. International Harvester Company*, 331 F.2d 462 (5th Cir. 1964). In the present instance, the plaintiff's requested charges 37 and

To merit reversal on this point, therefore, the plaintiff must establish that the instruction was an incorrect statement of law and that it was probably responsible for an incorrect verdict, leading to substantial injustice. Under the pre-comparative negligence Louisiana law,[6] a jury finding of contributory negligence in a tort suit precludes any recovery on the part of the plaintiff. Furthermore, the alleged contributory negligence of this plaintiff appears to be the only defense to strict liability under Article 2317 available in light of the answers of the jury to the individual interrogatories in this case.[7] Thus, if the trial judge incorrectly stated the applicability of contributory negligence as a defense to Article 2317 strict liability, the instruction led to an incorrect verdict and the substantial injustice of no recovery to the injured plaintiff despite his clear entitlement to same.[8]

### III

Article 2317 of the Louisiana Civil Code provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . things which we have in our custody . . ." In 1975, reversing prior jurisprudence to the contrary, the Louisiana Supreme Court held that this article created strict liability for damage caused by defects in a thing. *Loescher v. Parr*, 324 So.2d 441 (La.1975). The court held that, by reason of the responsibility imposed by this code article, the custodian or owner of a thing is responsible for damages caused through a vice or defect of the thing, without personal negligence on his part—"legal fault . . . being based upon the breach of his legal obligation to keep his thing in such condition or such control that it does no damage to others." 324 So.2d at 447–48. A vice or defect of the thing is a condition which causes an "unreasonable risk of injury to another", and the "fault [of the person responsible for the thing] rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition" that creates the unreasonable risk of injury to others. 324 So.2d at 446–47.[9]

---

38, if given, would have indicated that contributory negligence could defeat his strict-liability claim, and the plaintiff's counsel did not recognize the error in the court's instruction until his motion for judgment notwithstanding the verdict or alternatively for a new trial.

6. Subsequent to the accident here sued upon, the 1979 Louisiana Legislature enacted in Act 431 a pure form of comparative negligence to govern those cases in which "contributory negligence is applicable to a claim for damages." Civil Code Article 2323, as amended in 1979 La. Acts No. 431, effective August 1, 1980. *See generally, Symposium: Comparative Negligence in Louisiana*, 40 La.L.Rev. 289 (1980).

7. The jury found in answer to interrogatories numbers one through four, that the plaintiff fell through an open hatch or hole, other than the drill hole, in the skid mat of Dixilyn's rig. It found that this hole created an unsafe or dangerous condition on the rig and that such condition was not created by anyone else. The judge's instruction equated an unsafe condition with the defect required for liability under Civil Code Article 2317. See Part III of opinion, *infra*.

8. In a Third Circuit FELA case in which no evidence of contributory negligence had been presented, the court stated: "[I]n rare instances, where fundamental error occasions a miscarriage of justice, this court will notice such error despite counsel's failure to comply with Rule 51. . . . Allowing the jury to speculate on contributory negligence and thereby possibly to diminish the compensation recoverable, under the circumstances of this case, was a miscarriage of justice." *Paluch v. Erie Lackawanna Railroad Company*, 387 F.2d 996, 1000 (3rd Cir. 1965).

9. The basis of negligence liability is conduct that creates an unreasonable risk of injury to others, Restatement (2d) of Torts, Section 282 (1965), but (unlike in cases imposing strict liability) to be liable the defendant must have known or should have known of the unreasonable risk thus created. *Id.*, Sections 284, 289–91. Thus, although the creation or maintenance of an unreasonable risk of injury to others is a central basis for liability under either negligence or strict responsibility, in strict liability (unlike in negligence-based actions) the defendant may be liable for damages caused by vices or defects in things for which responsible under the Louisiana Civil Code, whether or not he knew or should have known of the unreasonable risk of injury he thus created or maintained. *Loescher v. Parr, supra; Holland v. Buckley*, 305 So.2d 113 (La.1974).

In recognizing the Article 2317 strict liability rule, the court also noted the available defenses, which are likewise applicable to other strict liability causes of action—liability may be avoided only by proof that the damage was caused by (a) the fault of the victim, (b) the fault of a third person, or (c) an irresistible force. 324 So.2d at 445, 449. In *Loescher*, only the latter defense was at issue; in rejecting it, the court noted that exculpation could only thereby be provided by "an irresistible cause or force not forseeable, usually a vis major or act occasioned exclusively by the violence of nature without the contribution by legal fault of any human being." 324 So.2d 449. Subsequently, in explaining the fault of a third person that might exculpate the custodian or owner of the similar strict liability under Article 2322, the Louisiana Supreme Court explained, in rejecting a defense on this ground, *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1293 (1979):

> The fault of a "third person" which exonerates a person from his own obligation importing strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence—i. e., where the damage resulting has no causal relationship whatsoever to the fault of the owner in failing to keep his building in repair . .

▮ In *Loescher* and *Olsen* the Louisiana court did not have occasion to address the issue of the third defense to strict liability under the Civil Code—i. e., the fault of the victim (here at issue). However, to be consistent with the stated criteria of the other two defenses, the victim's fault should be in the nature of an independent and superseding cause of his damages not imputable to the defendant, in order to absolve a defendant of its responsibility for damages caused by the defect of a thing for which he is strictly liable. (Here, the very basis of the defendant's strict liability was the unreasonable danger created to the unsuspecting or even careless passerby who might fall through the unguarded and not-to-be-expected hole in the walkway.)

Moreover, authoritative guidance is provided by a decision clarifying the defense of victim fault to strict liability provided by another article of the Louisiana Civil Code. In *Langlois v. Allied Chemical Corp., Inc.*, 258 La. 1067, 249 So.2d 133 (1971), a seminal decision in Louisiana strict-liability responsibility, the defendants urged both contributory negligence and assumption of the risk as exculpating them from strict liability; the court rejected both of these defenses, with reasoning clearly applicable to all strict-liability theories:

> The defense of contributory negligence which is urged here presupposes original negligence on the part of the defendant. This case is not a case where negligence is an ingredient of fault, and contributory negligence is not a defense. Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk. There is some authority for rejecting assumption of risk in cases which do not involve negligence, but the majority view is that assumption of risk is a defense to strict liability. A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risks and embraces the danger cannot recover damages for injury which may occur. 249 So.2d at 140.

As stated by Professor Ferdinand Stone in his authoritative treatise, 12 Louisiana Civil Law Treatise: Tort Doctrine, Section 439, p. 566:

> "Where the theory upon which recovery is sought is one of strict liability, either under a tort notion of implied warranty or of legal fault based on public policy, contributory negligence is not a defense, while voluntary assumption of a known risk (fault of the victim) act of a stranger and *force majeure* may be."

See also Andrus, *Strict Liability Under Civil Code Articles 2317, 2318, 2321*, 25 La.B.J. 105, 117–19 (1977); Comment, Fault of the

Victim: The Limits of Liability Under Civil Code Articles 2317, 2318, and 2321, 38 La.L. Rev. 995 (1978). As we ourselves have noted, citing *Langlois* and reversing a district court for giving instructions that contributory negligence was a defense, a defendant is not exculpated by the plaintiff victim's contributory negligence from the defendant's similar strict liability for harm caused by product defect. *Khoder v. Amf, Inc.,* 539 F.2d 1078 (5th Cir. 1976).

The defendants refer us to language in several intermediate appellate court decisions, some of which seem to have recognized contributory negligence as a defense in Article 2317, 2318 or 2321 strict liability cases, and some of which recognize only assumption of the risk. For the most part, the former decisions are distinguishable or not squarely in point,[10] but to the extent that they imply that ordinary carelessness or inadvertence of a plaintiff may exoner-

**10.** The defendant cites the following intermediate appellate court decisions as support for its argument that contributory negligence is the victim fault relieving the defendant from liability under Article 2317: *Daniel v. Cambridge Mut. Fire Ins. Co.,* 368 So.2d 810 (La.App. 2d Cir. 1979) (which, however, recognized assumption of the risk, not contributory negligence, as the defense). *Brooks v. U. S. Fidelity & Guaranty Co.,* 358 So.2d 660 (La.App. 1st Cir. 1978); *Alfonso v. Market Facilities of Houston, Inc.,* 356 So.2d 86 (La.App. 1st Cir. 1978); *Derouen v. Southern Pacific Transportation Company,* 351 So.2d 300 (La.App. 3rd Cir. 1977); *Korver v. City of Baton Rouge,* 348 So.2d 708 (La.App. 1st Cir. 1977); *Richards v. Marlow,* 347 So.2d 281 (La.App. 2nd Cir. 1977) (assumption of risk applies); *Parker v. Hanks,* 345 So.2d 194 (La.App. 3rd Cir. 1977); *Panek v. Gulf Insurance Company,* 341 So.2d 46 (La. App. 3rd Cir. 1977) (only fault of a third person exonerated a defendant from strict liability).

We do not consider these decisions to be convincing authority for that position and in fact note that several of them are not apposite to the case at hand. In *Daniel* for instance the victim fault found by the court was assumption of risk, not contributory negligence. *Brooks* ruled for the defendant with respect to injuries caused by defendant's calf because the plaintiff was the custodian of the calf at the time of injury. The *Alfonso* court relieved the defendant of liability because a person who "voluntarily utilizes [recreational] facilities assumes the reasonably foreseeable risks which are inherent in the use thereof." 356 So.2d at 89. The court at no point determines that the plaintiffs had been negligent in any way. In *Derouen* the defendant was held liable and all three defenses were eliminated. In *Korver,* there was at least some indication that the crack in the sidewalk was so obvious that it might not have constituted a defect for purposes of Article 2317; furthermore, it is questionable whether the sidewalk would have been considered under the guard of the adjacent property owner. The victim fault which prevented liability in *Richards* was a knowing and voluntary encounter with the risk, in short, assumption of risk rather than contributory negligence.

Perhaps the strongest attempt to justify the application of contributory negligence as victim

fault (though in an Article 2321 animal liability case) is made in *Parker.* The facts of this case are closely analogous to those in the two First Circuit opinions, *Dotson v. Continental Insurance Co.,* 322 So.2d 284 (La.App. 1st Cir. 1975) and *Parks v. Paolo,* 349 So.2d 896 (La.App. 1st Cir. 1977), which found no liability when "the offending animals were secured on the owner's premises, and the parties injured were on the premises against the wishes or instructions of the owner." *Alfonso v. Market Facilities of Houston, Inc.,* 356 So.2d at 89. Under such circumstances, the proper analysis may be that the defective animal (or thing) did not present an unreasonable risk of harm and therefore there was no need to even consider victim conduct for a defense. It may be noted further that the opinion in *Parker* represents the reasoning of only one member of the three-judge panel. The other two judges merely concurred in the result. Finally we note that *Panek* relieved the defendant of liability on the basis of fault of the third party, not fault of the victim.

We also recognize that some Law Review commentators are of the opinion that contributory negligence constitutes victim fault for purposes of a strict liability action. *See, e. g., The Work of the Louisiana Appellate Courts for the 1974–75 term—Torts,* 36 La.L.Rev. 400, 401 (1976); Comment, *Does Louisiana Really Have Strict Liability Under Civil Code Articles 2317, 2318 and 2321?,* 40 La.R.Rev. 209, 210 (1979). *To some extent this mistaken impression seems to flow from court language tying the strict liability to unreasonable risk of harm caused by the child, animal or thing for whom or which the defendant is responsible. The use of language that coincides with negligence terminology does not alter the nature of strict liability for damages caused by defects in things for which under the Civil Code the owner or custodian is responsible. See note 9, supra.*

We also note that Louisiana has retreated from a full application of contributory negligence even with respect to negligence liability in certain circumstances. *See, e. g., Boyer v. Johnson,* 360 So.2d 1164 (La.1978), *Baumgartner v. State Farm Mutual,* 356 So.2d 400 (La. 1978); Note, *Abrogation of the Contributory Negligence Bar in Cases of Disparate Risks,* 39 La.L.Rev. 637 (1979).

ate a strict liability defendant, they seem to be inconsistent with the law clearly pronounced by the State Supreme Court in *Langlois* and *Loescher*.

In summary, as Professor Stone correctly concludes, contributory negligence as an affirmative defense is "properly pleaded only to an action based on negligence." Stone, *supra*, § 56, p. 76. See also *Id.* § 50, p. 71.

The rule that a strict liability action is not barred by the conduct of the plaintiff which amounts to no more than ordinary contributory negligence (lack of due care) is generally established in other American jurisdictions as well. Restatement (2d) of Torts, §§ 402A (Comment n), 523 (1965); W. Prosser, Law of Torts, §§ 79, 103, pp. 522, 670–71 (4th ed. 1971); 2 F. Harper & F. James, The Law of Torts § 22.7, p. 1216 (1956); 46 A.L.R.3d 240 § 4, p. 248 (1972 and Supp.1979). This "ordinary contributory negligence" is to be distinguished from the contributory negligence that overlaps with assumption of risk—*i. e.*, "voluntarily encountering a known unreasonable risk." Prosser, *supra*, § 68, p. 441.[11]

It is apparent from the jury's answers to its interrogatories,[12] read in the light of the trial judge's instructions, that the defendant Dixilyn is liable under Civil Code Article 2317 for the injuries to the plaintiff Rodrigue occasioned by its defective drilling rig. The evidence supported at most only the plaintiff's ordinary contributory negligence, *i. e.*, inadvertence in failing to discover or protect himself against the possibility of the defect, conduct that will not relieve the defendant of liability. Accord-

ingly, we reverse and remand for trial to assess damages.

**REVERSED AND REMANDED.**

---

11. The increasingly widespread abrogation of the total bar of contributory negligence in favor of the mitigation of comparative negligence has resulted in some re-thinking of the traditional rule that contributory negligence does not affect the strict liability plaintiff's recovery. A trend toward allowing such conduct to reduce recovery is developing. *See, e. g., West v. Caterpillar Tractor Co.*, 547 F.2d 885 (5th Cir. 1977); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 575 P.2d 1162, 144 Cal.Rptr. 380 (1978); *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976); *Hagenbuch v. Snap-On Tools Corp.*, 339 F.Supp. 676 (D.N.H. 1972). We need not (and indeed could not)

now decide, however, that such a movement will occur in Louisiana with the advent (subsequent to the present accident) of comparative negligence. *See*, Plant, *Comparative Negligence and Strict Liability*, 40 La.L.Rev. 403 (1980). For the present controversy, it is sufficient to determine that Louisiana law does not classify the ordinary contributory negligence identified in the trial court's jury instructions as fault of the victim for purposes of exonerating a strict liability defendant under Civil Code Article 2317.

12. See footnote 7 *supra*.