434 So.2d 404 (1983)
Edward R. ROZELL
v.
LOUISIANA ANIMAL BREEDERS COOPERATIVE, INC., et al.
No. 82-C-2380.
Supreme Court of Louisiana.
June 30, 1983.
*405 R. Bruce Macmurdo, Percy, Macmurdo & Eaton, Baton Rouge, for plaintiff.
Charles N. Malone, Warren L. Mengis, Sp. Counsel, Duront, Price & Malone, James E. Moore, Carolyn Pratt Perry, Franklin, Moore & Walsh, Baton Rouge, for defendants.
WATSON, Justice.
The question is whether the owner of an animal who places that animal in the custody of a third person remains responsible for injuries caused by the animal under LSA-C.C. art. 2321.[1]

FACTS
Plaintiff, Edward R. Rozell, filed suit to recover damages for a crushed chest inflicted by a bull at the L.S.U. Dairy Improvement Center in Baton Rouge, Louisiana. Plaintiff was an employee of L.S.U. at the time of his injury. The bull, "Dixie Lee Fashion Designer", was owned one-third by Louisiana Animal Breeders Cooperative, Inc., and two-thirds by Atlantic Breeders Cooperative. The two cooperatives had placed the bull at L.S.U. where its semen could be used for artificial insemination. According to his affidavit, Dr. Arnold Baham is manager of the Louisiana Animal Breeders Cooperative, Inc. and is also head of the Dairy Improvement Center. Baham's affidavit and that of Jennings B. Frye, Jr., head of the dairy science department at the L.S.U. College of Agriculture, state that the custody, maintenance, feeding, and housing of the bulls in the insemination program is the responsibility of the L.S.U. Dairy Improvement Center.
In deposition, Dr. Baham testified that approximately thirty bulls are under his supervision. The artificial insemination done at the Dairy Improvement Center is financed primarily by the legislature and is intended to improve farmers' livestock at a minimum cost. The Dairy Improvement Center gets no income from sale of Dixie Lee Fashion Designer's semen; the money goes to the cooperatives who own the bull. Approximately seventy percent of the bulls are owned partially or wholly by the L.A. B.C. and the remainder are owned partially or wholly by L.S.U. To Baham's knowledge, *406 Dixie Lee Fashion Designer had never injured anyone else. On the day of the accident, L.S.U. was short one man and therefore Rozell was in the bull area alone. Employees are generally instructed not to go into a pen with a bull unless the bull is secured and there is at least one other person present.
Edward Richard Rozell testified in deposition that he had fed Dixie Lee Fashion Designer on the day of the accident. Afterward, he noted that the gate to the bull's water was almost closed. Because the gate was supposed to remain open all the time, Rozell took a step from behind the retaining wall to open it, his customary procedure. The bull, described as young and "Feisty" (Depo., p. 22), turned on top of him. After hitting the bull on the nose, Rozell was able to drag himself behind the small retaining wall and out of the building.
John Edward Chandler testified in deposition that he was assistant manager at the Dairy Improvement Center at the time of the accident and occasionally supervised handling of the bulls. Employees were instructed that no less than two people should work bulls and a bull should be tethered or restrained before one entered its area.
The trial court rendered summary judgments in favor of both cooperatives, dismissing plaintiff's suit. The trial court concluded that the owners of the bull were not responsible for plaintiff's damages because they did not have custody and/or control of the animal at the time of the accident. On rehearing, the court of appeal affirmed both summary judgments, 422 So.2d 435 (La.App. 1 Cir.1982), relying on three court of appeal opinions which refused to hold owners responsible for damages because the domestic animals in question were not actually or constructively under the control of their owners.[2] A writ was granted to consider the judgment. 426 So.2d 175 (La. 1983).

LAW
Holland v. Buckley, 305 So.2d 113 (La. 1974) overruled past judicial interpretations of Civil Code Article 2321, which states: "The owner of an animal is answerable for the damage he has caused;". Holland held:
"When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event." 305 So.2d at 119.[3]
Holland dealt with an animal in the custody of its owner. Responsibility under French law rested either on the owner of the animal or on one making use of it, such as the usufructuary, the farmer, the borrower or the lessee. Planiol's Civil Law Treatise, Vol. 2, § 919 (L.S.L.I.Transl., *407 1959).[4] Professor Ferdinand F. Stone[5] also points out that French law extends responsibility to a custodian using the animal as well as the owner. However, "[U]nlike the French Code, Louisiana's contemplated only the responsibility of the proprietaire." F. Stone, Louisiana Tort Doctrine, § 382 in 12 Louisiana Civil Law Treatise 493 (1977). Stone-Louisiana Tort Doctrine, § 382 at page 493. Louisiana Civil Code Article 2321 refers solely to the liability of the owner, "the proprietaire".
"Roman law placed the obligation to repair squarely upon the owner of the offending animal as an incident of ownership. This solution is also found in LOUISIANA (CC art. 2321), ARGENTINA (CC art. 1126), BRAZIL (CC art. 1527), COLOMBIA (CC art. 2353), MEXICO (CC art. 1930) and YUGOSLAVIA. Where the owner was not in control of the animal, he might have an action for indemnification against the person who was in control where improper management can be shown." "Liability for Damage Caused by Things", Ferdinand F. Stone: International Encyclopedia of Comparative Law, Volume XI, Chapter 5 at p. 14.[6]
Loescher v. Parr, 324 So.2d 441 (La.1975) points out: "Articles 2315 through 2322 express the same concepts and represent the same scheme as French Civil Code Articles 1382 through 1386, of which they are to a large part verbatim translations." 324 So.2d at 447. However, in relation to animals, the French alternate liability for one having the custody or "garde" of an animal was specifically omitted from LSA-C.C. art. 2321.
Incorporation of the custody principle of legal liability in Civil Code Article 2317 into Article 2321 is contrary to Planiol's explanation of Article 2321. Planiol states that the French counterpart to Article 2321 was intended to extend liability to include animals not in custody. Otherwise, "it [French Art. 1385: La.Art. 2321] would be useless, for it would be the reproduction pure and simple of the general principle of Art. 1384, par. 1. [LSA-C.C. art. 2317]", Planiol, supra, § 918, at page 516.
Various modifications of Civil Code Article 2317 are set forth in Articles 2318 through 2324. Entrevia v. Hood, 427 So.2d 1146 (La.1983). Concerning animals, Article 2321 modifies Article 2317 by eliminating the custody requirement. Liability arises solely from the legal relationship between the owner and the animal. Holland, supra. As in the case of a defective building, the owner's duty is nondelegable. Olsen v. Shell Oil Co., 365 So.2d 1285 (La. 1979).
According to Loescher, "Article 2317 embodies the concept of the legal fault of the guardian of a thing for the damage caused by the defect of his thing." 324 So.2d at 448. However, the "similar [but not identical] concept of legal fault" in Article 2321 is based not on guardianship and defectiveness but "the deficient act" of the animal. 324 So.2d at 448.[7] The deficiency in the case of an animal rests in the infliction of the damage. "The fault committed by the proprietor ... of the animal has no need to be proved: it is presumed by the law, which *408 declares him legally responsible for the damage." Planiol, supra, § 920 at p. 517.[8]

CONCLUSION
The jurisprudential custody requirement of Article 2317 which has been grafted onto Article 2321 liability has no statutory basis in the Louisiana codal scheme. Since an animal is also a thing, Civil Code Article 2321 would be superfluous if liability for things in one's custody under Article 2317 were incorporated into Article 2321. It is not necessary that the owner of an animal also have control or "garde" of the animal.
One who entrusts his animal to the care of another is still the owner. Under Article 2321, he remains liable for damages inflicted by that animal. Ownership alone is the basis of liability. Article 2321 is "an exception to the general Louisiana doctrine that fault or negligence must exist before tort liability can be established." 17 Tulane L.Rev. at 141, 142. By entrusting the animal to another custodian, the owner does not escape responsibility. As to damages inflicted by that animal, the custodian is a third person for whom the owner is answerable.[9] LSA-C.C. art. 2317; Olsen, supra.
"The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure." Holland, supra, 305 So.2d at 119.
One who entrusts his animal to another does so at his own risk, although any fault or negligence on the part of the custodian would entitle the owner to indemnity. While it is possible to envision hypothetical situations which would make this obligation onerous to the owner of an animal, no one is obliged to maintain such ownership and its concomitant responsibilities.
For the foregoing reasons, the judgment of the court of appeal is reversed, and the matter is remanded for trial on the merits.
REVERSED AND REMANDED.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
DENNIS and LEMMON, JJ., dissent and will assign reasons.
MARCUS, Justice (dissenting).
I consider that La.Civ.Code art. 2321 should be read in pari materia with art. 2317 resulting in a conclusion that the owner of an animal who places that animal in the custody of a third person should not be held strictly liable. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
This court should abandon its construction of C.C. art. 2321 providing that the owner of a domestic animal that harms another is presumed to be at fault and further providing that the fault is in the nature of strict liability. Holland v. Buckley, 305 So.2d 113 (La.1974) is wrong and places an interpretation on Article 2321 which surely would have taxed the imagination of the redactors in 1870 and which is out-of-step with modern society when we consider today's diversified business arrangements concerning both the possession and care of domestic animals.
If Holland continues to be law we ought to at least adopt the reasonable exception that our courts of appeal have espoused in Fontenot v. Soileau, 336 So.2d 1006 (La. App. 3rd Cir.1976), Alfonso v. Market Facilities of Houston, Inc., 356 So.2d 86 (La.App. 1st Cir.), writ denied, 357 So.2d 1169 (La. 1978) and Brooks v. U.S. Fidelity and Guaranty Company, 358 So.2d 660 (La.App. 1st Cir.1978), namely, for the owner to be held accountable, the domestic animal must be actually or constructively under his control when it injures a poor innocent victim.
I respectfully dissent.
NOTES
[1] LSA-C.C. art. 2321 provides:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
[2] Fontenot v. Soileau, 336 So.2d 1006 (La.App. 3 Cir. 1976); Brooks v. United States Fidelity & Guaranty Company, 358 So.2d 660 (La.App. 1 Cir. 1978); and Alfonso v. Market Facilities of Houston, Inc., 356 So.2d 86 (La.App. 1 Cir. 1978), writ denied 357 So.2d 1169 (La. 1978). In Alfonso, plaintiffs were riding the horses which bolted, and it could be argued that they assumed the risk of the accident. The court of appeal indicated as much: "one who voluntarily utilizes such facilities [trail rides] assumes the reasonably foreseeable risks which are inherent in the use thereof." 356 So.2d 89. 2 Restatement of Torts 2d, § 484, provides strict liability for the possessor of an animal and states that contributory negligence is not a defense except when there is a voluntary and unreasonable assumption of the risk. See Parker v. Hanks, 345 So.2d 194 (La.App. 3 Cir. 1977) writ denied, 346 So.2d 224 (La.1977), and Vidrine v. White, 352 So.2d 776 (La.App. 3 Cir. 1977) writ denied 354 So.2d 1376 (La. 1978).
[3] "With regard to dangerous or noxious animals, the responsibility is not simply strict; it is probably absolute." "Responsibility for Damage Caused by Animals," F. Stone, Louisiana Tort Doctrine, § 385 in 12 Louisiana Civil Law Treatise 500 (1977). Wild beasts, "ferae naturae", are always dangerous. Vredenburg v. Behan, 33 La.Ann. 627 (1881); Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959).
[4] French Civil Code Article 1385 declares:

"The owner of an animal or one who makes use of it, while it is used by him is responsible for the damage that the animal has caused, whether the animal was under his care or whether it was lost or had escaped."
[5] W.R. Irby Professor of Law and Scholar in Residence, Tulane University School of Law.
[6] "FRANCE and BELGIUM would hold the owner (proprietaire) or alternatively the user (celui qui s'en sert) responsible for damage caused by the animal. Similar provision is found in ITALY (CC art. 2052), QUEBEC (CC art. 1055) and SCOTLAND." "Liability for Damage Caused by Things", Ferdinand F. Stone: International Encyclopedia of Comparative Law, Volume XI, Chapter 5, at page 14.
[7] The language of the writ denial in Harrington v. Upchurch, 337 So.2d 222 (La. 1976) is slightly misleading. A cow or other domestic animal should not necessarily present "an unreasonable risk of injury" for its owner to be liable. Although Loescher uses that language, it is not found in Holland. Perhaps the Harrington cow was not guilty of a deficient act?
[8] The same language is quoted in Holland, 305 So.2d at 117.
[9] This does not preclude any independent cause of action against one who has an animal, a "thing", in his custody. LSA-C.C. art. 2317.