397 So.2d 1370 (1981)
Ridgely CANTY, Individually and as Administrator of Minor Children Sharon Elizabeth Canty and Shane Michael Canty and Christina LeCompte Canty
v.
TERREBONNE PARISH POLICE JURY, Terrebonne Parish, Louisiana and City of Houma, Houma, Louisiana.
No. 13870.
Court of Appeal of Louisiana, First Circuit.
March 23, 1981.
Rehearing Denied May 12, 1981.
Writ Denied June 22, 1981.
*1372 Gordon Hamner, Houma, for plaintiff and appellant.
Philip Henderson, Houma, for defendant and appellee Terrebonne Parish Police Jury.
A. Deutsche O'Neal, Sr., Houma, for defendant and appellee City of Houma.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a suit by a Terrebonne Parish property owner[1] for loss of land and house damage allegedly resulting from the defendant's dredging of a drainage canal which flows through the plaintiff's property. The plaintiff claims the dredging pierced a firm clay soil layer in the canal and caused loose silty soil beneath the surface of his property to ooze into the canal. His land subsequently subsided and his house sunk, causing cracks in the walls and floors and requiring him to repeatedly jack up the foundation.
Ridgely Canty originally instituted the suit against the Terrebonne Parish Police Jury and the City of Houma, alleging that they were jointly responsible for his damages. Later, the city was dismissed without prejudice from the litigation but the suit against the police jury went forward. From a trial court judgment finding a lack of causation and relieving the police jury of liability, the plaintiff brought this appeal.
A number of issues have been raised by the plaintiff in his specification of errors but all of them center around questions of causation, negligence and strict liability.

THE FACTS
Canty and his wife purchased a house and lot at 308 Carolyn Avenue in Houma, Louisiana in August, 1976. The eastern edge of the lot was near the western bank of Bayou Sale, a small ditch-like canal which flows through part of Houma. Canty's title to the property and a survey prepared in connection with his acquisition show that he owns that portion of Bayou Sale which traverses his property. Canty testified that, except for a few small cracks in the driveway and a leaning support pillar at one corner of the house, the property was in good shape at the time of acquisition. The house and land were level.
Prior to Canty's acquisition, somewhere in the mid-1960's, the City of Houma apparently dredged and widened Bayou Sale to enhance drainage in the area. The widening allegedly caused Canty's ancestor in title to suffer a sudden loss of land along the bayou bank, and the city thereafter built a bulkhead to prevent further erosion. The bulkhead purportedly accomplished its intended purpose until late 1977 and early 1978, when the loss of land complained of in this suit allegedly began to occur.
In the early 1970's the Terrebonne Parish Police Jury began constructing forced drainage projects in many areas of the parish to relieve persistent flooding problems. One of those projects, Project 1-5, was built around the area where Canty's residence is located. Bayou Sale is used as the main drainage artery through which runoff flood and rain water in the Project 1-5 area is collected. Forced drainage Project 1-5 was completed and accepted by the police jury on April 24, 1974. It is maintained in conjunction with the City of Houma. It was designed and built to accommodate about 3,500 acres of land in the east Houma area. Five 48 inch pumps are used to pump rain and flood waters out of the area.
*1373 As part of its maintenance of the Project 1-5 system, the Terrebonne Parish Police Jury let a contract in August, 1974, for dredging or cleaning of Bayou Sale. The purpose of the contract was to remove silt and debris which had collected in the canal and had hindered efficient operation of the forced drainage system. Testimony at trial was conflicting as to whether Bayou Sale near Canty's residence was actually dredged or merely swept clean. An engineer representing the firm which designed the sweep out and the contractor who performed the job testified that the canal near Canty's residence was merely swept out only loose silt on the bottom and trash and debris were removed. There was no dredging of any solid soils, they claimed. Their testimony indicated that an oral change order resulted in the clean out near Canty's residence in lieu of the dredging called for by the plans and specifications.
However, Charles Hair, a geotechnical engineer who was qualified as an expert for the plaintiff, testified that the canal had indeed been dredged and that the dredging pierced a layer of thick clay soil on the bottom of the bayou. When the clay layer was dredged away, loose silt and soil which underlay Canty's residence began oozing into the bayou through the action of ground water and the weight of the land on top of the silty soil. When the soil flowed into the bayou, the waters which flowed through the bayou entrained the soil and carried it away, the expert testified. As the soil oozed out, the land upon which Canty's residence was situated began to subside. Canty testified he constructed a fence about 8 feet from the bayou bank when he first acquired the property, but only a few feet of land remained between the fence and the bayou at the time of trial. Canty said the fence now leans towards the bayou and he had to tie it back to prevent it from falling into the bayou. He also claimed that the land behind the bulkhead which had been built by the city had subsided about 10 inches. Trees which had grown near the bayou bank also began leaning towards the canal.
Canty's expert said his opinion that the bayou had actually been dredged was based on the fact that engineering charts depicting the bayou prior to the dredging showed the bayou at a depth above that at which it was at the time of trial. Also, the bayou depth at the time of trial was almost exactly the depth which the engineers had planned for the bayou to be when the dredging contract was completed. The expert said the effect of the dredging was like uncapping a tube of toothpaste. When the cap of the tube (the firm clay layer) was removed, the toothpaste (the silt beneath Canty's residence) was squeezed out. The expert also said that while it is possible that another clean out at another time or the installation of culverts under a nearby street might have caused Canty's problems, he believed the 1974 dredging was the triggering mechanism.
A recent engineering report prepared for the City of Houma and introduced into evidence states that the drainage capacity of Bayou Sale is "severely hampered by such problems as siltation due to eroding banks, trash being thrown into the channel, clogged trash screens and other related problems." Testimony at trial showed that the police jury, after being informed of Canty's problems, put up a trash screen to help prevent a backwash effect which some parish officials blamed for Canty's problems.
A former occupant of the house testified that there did not appear to be any difference as to the amount and level of the property in 1976 compared with the property as it existed at the time of trial. She also testified that her father, who owned the house before Canty, told Canty how to jack the house up and also told Canty that he had jacked the house up in the past. Canty generally denied these statements, although he acknowledged that the former owner may have lifted the house on one occasion to straighten the corner foundation on the northern side of the house.

TRIAL COURT'S FINDINGS
In written reasons for judgment, the trial court found as a fact that the dredging *1374 operation performed by the jury's contractor in 1974 was actually a cleanout of Bayou Sale. The court found that an oral change order had changed the contract from a dredging operation to a cleanout. In regard to the plaintiff's expert's testimony, the court stated that the expert "very carefully noted" that the subsidence and erosion could have begun prior to the 1974 cleanout, and could have been caused by the placement of culverts beneath the nearby street. While the sweeping or cleaning out of the bayou may have accelerated the erosion problem by increasing the flow of water in the bayou, the trial judge held that the increased erosion "[c]ertainly ... was not a foreseeable consequence." The judge concluded that the plaintiff failed to prove a causative connection between the jury's operation and the plaintiff's damages.

SPECIFICATIONS OF ERRORS
The plaintiff claims on appeal that the trial court erred: (1) in finding that the police jury made an oral change order in the contract for the dredging of Bayou Sale; (2) in finding that the jury's cleanout operation was not the cause of the subsidence; (3) in finding that the jury was not negligent or not liable under a theory of strict liability; and (4) in denying the plaintiff the right to call certain purported agents of the police jury under cross examination.

CAUSATION
Whether the plaintiff seeks recovery under a negligence or strict liability theory, he must prove that the negligent act or defect complained of was a cause-in-fact of the injury.
Conduct is a cause-in-fact of an injury or damage if it is a substantial factor in bringing about the harm. Follins v. Barrow, 354 So.2d 609 (La.App.1st Cir. 1977), writ denied 356 So.2d 434 (La.1978); and Hall v. State through Department of Highways, 231 So.2d 169 (La.App.3rd Cir. 1968), writ refused 252 La. 959, 215 So.2d 128 (1968). In the instant case we are of the opinion that the depth of Bayou Sale was a substantial factor in bringing about the rapid subsidence which took place; thus, it was a cause-in-fact.
It certainly could be argued that subsidence was already taking place at an unnoticeable rate because culverts under a nearby roadway located at a corner of the property had previously pierced the clay layer. However, any loss of the substrata silty material caused by this piercing of the clay layer did not result in any appreciable subsidence. We conclude that the piercing of the clay layer near Canty's residence, either by man or nature, was a cause-in-fact of the rapid subsidence which took place. The trial judge was clearly wrong in finding a lack of causal connection between the depth of the bayou and the subsidence on Canty's property. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).

NEGLIGENCE
Conduct is negligent if it "falls below the standard established by law for the protection of others against unreasonable risk of harm. It is a departure from the conduct expectable of a reasonably prudent man under like circumstances." Pence v. Ketchum, 326 So.2d 831, 835 (La.1976). Although the result in Pence has been seriously questioned, Thrasher v. Leggett, 373 So.2d 494 (La.1979), the court's statement of what constitutes negligent conduct remains the law. See also Prosser, Law of Torts, Section 31, page 145 (4th Ed.1971).
We are of the opinion that the police jury's conduct in cleaning or dredging the drainage artery was not negligent. The record is void of any evidence of rapid subsidence in the area prior to the dredging which would or should have put the jury and its agents on notice that such a condition might occur if the bayou was cleaned or dredged. There was no indication of a soft layer of silt beneath the firm clay layer which encased the bayou and a part of Canty's property. The jury and its agents undertook the dredging operation in a reasonable manner and caused no damage *1375 which they reasonably could have foreseen. The duty of the jury, its contractor and its engineer was to use reasonable care in designing and implementing the dredging or cleaning operation. Based on the evidence in the record we conclude that there was no breach of a duty, and therefore no negligent conduct.

STRICT LIABILITY
Plaintiff also sued under a strict liability theory, citing La.C.C. art. 667.[2] In a request for supplemental briefs this court expanded the strict liability inquiry to La.C.C. art. 2317.[3]
To succeed in an Article 2317 action, the plaintiff must prove that a "thing" within the care or control of the defendant caused damage because of a defect which created an unreasonable risk of harm to another. Loescher v. Parr, 324 So.2d 441 (La.1975). The immovable drainage ditch called Bayou Sale is certainly a "thing," La.C.C. arts. 448, 450 and 462; and, as a drainage artery, it is arguably under the care or control of the Police Jury.
However, we do not find that this drainage artery contained a defect which created an unreasonable risk of harm to another.
We disagree with the theory expressed in Marquez v. City Stores Company, 371 So.2d 810 (La.1979), that an unusual occurrence in and of itself is proof of a defect. See Stablier v. City of Baton Rouge and Parish of East Baton Rouge, 393 So.2d 148 (La.App.1 Cir. 1980). In any event, it is not unusual for land to subside in south Louisiana where substrata of silty or spongy material are known to exist.
Even if we conceded that Bayou Sale is defective under the coverage of Article 2317, we would still conclude that the defendant bears no legal responsibility for the subsidence and resulting damage to the plaintiff. It is clear that substrata silty material existed under the plaintiff's property. Only through the simultaneous occurrence of two factorsthe depth of the drainage artery and the pool of substrata silty material underlying plaintiff's propertydid the subsidence occur. Stated another way, the artery alone did not cause the subsidence. The plaintiff's property, over which he had control, played an equal if not greater part in the resulting subsidence. If there was a defect in the bayou, there was also a defect in the plaintiff's property.
If a damaged thing in the plaintiff's care or custody is itself defective and if the resulting harm would not have occurred without the defect in the plaintiff's thing, then the damage which is caused substantially by the plaintiff's defective thing must be borne by the plaintiff. This defensethat the plaintiff's thing itself was defective and was substantially to blame for its own deteriorationis somewhat analogous to the defense of victim fault in the sense that the primary harm-causing instrumentality was under the victim's care or custody, and the victim should therefore bear the loss incurred because of the defective instrumentality over which he had control.
The three defenses to an Article 2317 strict liability suit, as outlined in Loescher v. Parr, supra, are fault of the victim, fault of a third person or irresistible force. These defenses, along with the defense of defect in the victim's property, are available whether the plaintiff sues under Article 2317 or Article 667. Assumption of the risk has been held to be a defense in all *1376 strict liability cases. Daniel v. Cambridge Mutual Fire Insurance Company, Andover, Mass., 368 So.2d 810 (La.App.2nd Cir. 1979) writ denied La., 369 So.2d 1063; Romero v. Town of Welsh, 370 So.2d 1286 (La.App.3d Cir. 1979). So should the other strict liability defenses.

CROSS EXAMINATION OF POLICE JURY AGENTS
Plaintiff argues that the trial judge erred when he disallowed the plaintiff to present testimony under cross examination of Stanley Marchand, Mark Rogers, Emmett Prestenback, and J. David Bergeron. Marchand, Rogers and Bergeron were employees of the engineering firm under contract with the police jury to design and supervise the dredging operation. Prestenback was the owner of the firm with which the jury contracted to do the work.
The plaintiff argues that La.C.C.P. art. 1634 allows an adverse party to call "any party or his representative" on cross examination, and that "`representative' * * * means an officer, agent or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time testimony is taken."
When the trial judge rules that testimony of a witness is inadmissible, an offer of proof, La.C.C.P. art. 1636, can be made. In Hopkins v. Department of Highways, 350 So.2d 1271 (La.App.3rd Cir. 1977), the court held that it was error to refuse an offer of proof of testimony from a disqualified witness. See also Liberty Mutual Insurance Company v. Bryant, 191 So.2d 747 (La.App.2nd Cir. 1966), writ refused 250 La. 16, 193 So.2d 528 (1967). Thus, an offer of proof would be proper when the trial judge refuses to allow the testimony of a witness called under cross examination, and it would be error to deny such a proffer. However, no offer of proof was attempted in this case. Since plaintiff failed to avail himself of the opportunity to make an offer of proof, as he is entitled to do under La.C. C.P. art. 1636, he cannot complain on appeal. Carroll v. Guillot, 337 So.2d 310 (La. App.3rd Cir. 1976).

ORAL CHANGE ORDER
It is not the legality of the oral change order to a public works contract that is in question, but rather what work was done under the contract. We find no error in the trial judge's conclusion that the contract merely swept clean Bayou Sale rather than dredging same.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
EDWARDS, J., concurs for the reasons assigned by the trial judge.
NOTES
[1] Ridgely Canty sued individually and as administrator of his three minor children. His wife, Christina LeCompte Canty, was also named as a plaintiff. We will refer to Canty as plaintiff.
[2] "Art. 667. Limitations on use of property

"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
[3] "Art. 2317. Acts of others and of things in custody

"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."