CHEHARDY, Judge.
In this appeal we must determine whether a landowner is strictly liable for flood damage to neighboring property resulting from the landowner’s filling and grading his land so as to block his neighbor’s drainage across it, where the drainage is not the result of a natural servitude.
The plaintiffs in this matter, Robin and Jane Vicknair and Dennis and Rebecca Childs, own adjacent lots fronting on Cambridge Drive in Cambridge Place East subdivision, Laplace. Abutting their rear property lines are two lots formerly owned by General Homes-Louisiana, Inc., defendant. When plaintiffs moved into their homes in early 1981, the General Homes lots had not yet been developed. General Homes began filling and grading the lots in early 1982. Subsequently plaintiffs began to experience flooding in their back yards following heavy rains, most notably on October 7,1982, when the dens of both houses flooded. (Both houses had dens sunken about four inches below the grade of their slabs, level with the exterior patios onto which each den opened.)
Thereafter both sets of plaintiffs attempted various remedial measures. Ultimately the Yicknairs built a concrete flood wall around their patio and dug a small ditch along their side property line in an attempt to drain their back yard. The Childses constructed a retaining wall or levee of timbers and earth along their rear property line. Despite these efforts water continued to pool in their back yards.
Eventually plaintiffs filed suit against General Homes. (We note plaintiffs amended and supplemented their petition by naming as defendants the individuals who bought the subject properties from General Homes. Because only General Homes was cast in judgment and because General Homes has assumed the defense of the individual owners, we find it unnecessary to refer to them individually.) General Homes filed a third-party demand against Marvin Builders, Inc., which had built plaintiffs’ homes. After trial on the merits, the district court rendered judgment in favor of plaintiffs against General Homes, awarding damages, and dismissed •the third-party demand against Marvin Builders.
In his reasons for judgment, the trial judge concluded all the evidence confirmed there was no flooding prior to General Homes’ beginning new construction to the rear of plaintiffs’ property. He found that General Homes had elevated its lots almost one foot above the rear grade of plaintiff’s property before the slabs were laid. “[TJhere is no other conclusion to draw other than the exaggerated elevation of the General Homes property triggered the flooding experienced by Plaintiffs,” stated the judge.
The court referred to LSA-C.C. art. 667, which states a proprietor may not make *1363 any work on his estate that causes damage to his neighbor. He also cited Ernst v. H.H. Burstein Enterprises, Inc., 379 So.2d 852 (La.App. 4 Cir.1980), in which the court held that landowners inconvenienced and damaged by water flow caused by the adjoining landowners’ filling their lot to a higher level were entitled to have a retaining wall constructed across the property line.
The court stated further that General Homes’ alleged compliance with subdivision requirements carried no weight: “[T]he one and one-half years of dry land the Plaintiffs enjoyed before General Homes arrived on the scene is the most persuasive evidence that this Court’s findings are correct.” The district court awarded the Vick-nairs $2,334 in special damages and $7,500 in general damages, and the Childses $526.36 in special damages and $2,000 in general damages. The court dismissed the third-party demand on the ground Marvin Builders was not negligent.
On appeal, General Homes contends that plaintiffs’ flooding results not from the elevation of General Homes’ lots but from the uneven grading of plaintiffs’ lots, resulting in improper drainage patterns, and from the fact that plaintiffs’ dens are below minimum flood grade level. Briefly, General Homes asserts these factors constitute fault of the victim (plaintiffs) or fault of a third party (Marvin Builders) such as to exonerate General Homes from strict liability, if applicable. Alternatively, General Homes contends the legal servitude established by C.C. art. 667 is not applicable.
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.” LSA-C.C. art. 667.
“Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
“Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor’s house, because this act occasions only an inconvenience, but not a real damage.” LSA-C.C. art. 668.
There is no question that the servitude of natural drainage, established by LSA-C.C. art. 655, is not applicable here. That article states,
“An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow.”
Under this statute, the plaintiff landowners have the burden of proving that the elevation of their lands is higher than the adjoining lands so that waters would flow naturally from their properties to the adjoining estate. Poole v. Guste, 246 So.2d 353 (La.App. 1 Cir.1971), aff’d 262 So.2d 339.
It is obvious that plaintiffs’ back yards previously drained into the General Homes lots; once those lots were elevated, the water could no longer flow in that direction. Clearly, however, plaintiffs’ drainage patterns resulted from the act of man; their builder, Marvin Faulk, testified he had filled and graded their lots prior to pouring the slabs for the houses. In any case, any natural drainage pattern had to have been obliterated by the original clearing and levelling of the entire Cambridge Place East tract to subdivide it and to excavate streets.
Thus plaintiffs could not claim their estates are “dominant” to General Homes’ “servient” estates to justify the drainage from their back yards into General Homes’ lots.
Without the benefit of a natural servitude of drainage, therefore, the issue is whether defendant’s action violates the legal servitude imposed by Article 667. A *1364 suit under Article 667 is not a tort action in the sense that deliction in its usual connotation is a necessary element. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975). Article 667 expresses a doctrine of strict liability that does not depend upon negligence. Craig v. Montelepre Realty Co., 211 So.2d 627 (La.1968).
“An activity, then, which causes damage to a neighbor’s property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. * * * ”
Hero Lands Company v. Texaco, Inc., supra, at 97.
The defenses to a strict liability suit, whether a plaintiff sues under LSA-C.C. art. 2317 or C.C. art. 667, are fault of the victim, fault of a third person or irresistible force, along with the defense of defect in the victim’s property. Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1 Cir.1981), writ denied 401 So.2d 988 (La.1981).
“This defense — that the plaintiff’s thing itself was defective and was substantially to blame for its own deterioration — is somewhat analogous to the defense of victim fault in the sense that the primary harm-causing instrumentality was under the victim’s care or custody, and the victim should therefore bear the loss incurred because of the defective instrumentality over which he had control.”
Canty v. Terrebonne Parish Police Jury, supra, at 1375.
The testimony established that the rear of the General Homes lots had been filled to an elevation approximately six inches higher than plaintiffs’ lots. General Homes’ representative, Les Bryant, and the four individuals who had purchased the properties from General Homes all testified the General Homes lots had been graded so that all water drained from the rear to the front, into the street. None of the individual defendants had ever seen water flowing to the rear of their properties. (Only two of General Homes purchasers actually testified. The parties stipulated that the testimony of the other two, if taken, would be exactly the same on the relevant facts.)
In addition, Fred Cunningham, a civil engineer who was defendants’ expert witness, testified he had examined the rear lot line of the General Homes lots and that the soil at the property line, supported by a six-foot-high wooden fence, exhibited no signs of substantial erosion, negating any significant water flow onto plaintiffs’ property.
Les Bryant, Fred Cunningham and Marvin Faulk, the builder of plaintiffs’ homes, all testified that proper drainage for a lot in the subdivision is from the rear property line to the street in front of the house.
Mr. Cunningham, president of Landry Engineering Company, Inc., had surveyed the Vicknairs’ lot at the Vicknairs’ request prior to the filing of suit. He had informed them their flooding was caused by ponding in their rear yard and that the problem could be remedied by digging a swale along their side property line to the front sidewalk. Cunningham testified that he had observed that the rear of the Vicknairs’ lot was lower than the side of their lot. In his opinion, also, the fact that the den was the same elevation as the patio made it susceptible to flooding. Cunningham had also examined the Childs home on an informal basis, at Mrs. Childs’ request, during his visit to the Vicknairs. He stated he had noticed the Childs also had a sunken den.
Shortly before trial of the case, Cunningham had surveyed the General Homes lots, which he said are properly graded. He had looked over their fence at the Vicknairs’ and Childses’ back yards and observed they were low in the back and the swales almost nonexistent at the side. In his opinion the ponding water was caused by lack of fill in the back yards. He stated, however, that even if more fill was added to improve the rear yard drainage, the plaintiffs’ houses would still be likely to flood because of their sunken dens, which he stated were at too low a grade. In his opinion, building a levee at the rear of the plaintiffs’ yards *1365 would have no effect because their excess water was not coming from defendant’s lots.
Both Mr. and Mrs. Childs testified that prior to building the timber-and-dirt levee at their rear property line they had noticed water “coming in waves” under their fence during and after heavy rains. Mr. Cunningham felt the water could not have come from the General Homes property because those lots were properly graded. He attributed it to the existence of a five-inch space between the fences of plaintiffs and defendant, saying that there was a low area between the fences and the water “could be coming from anywhere.”
The Vicknairs had dug a ditch, but the ditch did not significantly reduce the pooling water. Both sets of plaintiffs testified that they had added some fill to their back yards but water still accumulated there. Mrs. Vicknair testified that about half her yard drains to the front of the house but the other part just does not drain.
Mr. Bryant stated the usual practice of General Homes was to grade their lots with a one-degree slope from the rear to the front and further to grade with a swale between the houses (a shallow ditch to channel the water from the rear to the front).
Although General Homes attempted to establish that the low parts of plaintiffs’ slabs (their sunken dens) were in violation of the subdivision building regulations or of the national flood insurance program, they did not lay a sufficient predicate for •these claims.
Marvin Faulk testified that in developing plaintiffs’ lots he had graded them to slope from back to front. He also built in a swale in the gradient. He testified further that the slab elevation was 1.37 feet above the base flood elevation. During the time he was building the plaintiffs’ houses he had never noticed any flooding problems. (At that time the General Homes property was still undeveloped.) He said that proper subdivision drainage requires the water to go into the street.
Reviewing all the evidence, we conclude the trial judge erred in his legal conclusions. He stated, “[TJhere is no other conclusion to draw other than the exaggerated elevation of the General Homes property triggered the flooding experienced by the plaintiffs.” This is true in one respect; but we must look further and determine whether the elevation of defendants’ lots was the cause-in-fact of the flooding. See Canty v. Terrebonne Parish Police Jury, supra.
The continued ponding in plaintiffs’ backyards after they built levees along their rear property lines negates runoff from defendant’s property. This is supported by the testimony from the owners of the General Homes lots that their lots drain only to the front. The only conclusion to be reached is that plaintiffs’ lots do not drain themselves adequately and thus must be improperly graded. This constitutes an intervening factor in the chain of causation, and thus one of the exceptions to strict liability, because it is either fault of the victims or fault of a third party (Marvin Builders).
The trial judge improperly based his findings on the Ernst case, supra. In that case the facts clearly established that the flooding on the Ernst property was caused by water runoff from the defendant’s elevated lots. The fact that plaintiffs have made attempts, so far inadequate, to relieve their ponding water does not alter the preponderating evidence that there is no significant water run-off from defendants’ lots.
Plaintiffs never sued Marvin Builders directly. Accordingly, we do not consider whether the improper grading of plaintiffs’ yards was the fault of the third-party defendant.
For the foregoing reasons, therefore, the judgment of the district court is reversed insofar as it found General Homes-Louisiana, Inc. liable to plaintiffs, but affirmed insofar as it dismissed the third-party demand against Marvin Builders, Inc. Plaintiffs’ suit is dismissed. Plaintiffs are assessed all costs.
AFFIRMED IN PART, REVERSED IN PART.