SHORTESS, Judge.
Melvin Ray Smith (Smith) fell while attempting to get into the cab of a flatbed truck while working at Exxon Corporation’s (Exxon) Baton Rouge refinery on February 28, 1983. He sued Exxon and the owner of the truck, Partex Construction, Inc. (Partex). His wife, Janet Ryals Smith,[2] joined in the suit seeking damages for loss of consortium.
After a six-day jury trial which ended March 4, 1991, judgment was entered in accordance with the jury’s verdict dismissing plaintiffs’ suit. Plaintiffs then appealed to this court. Plaintiffs’ first assignment of error was that they did not receive a fair trial because of the failure of the trial court to grant challenges for cause of two prospective jurors, one of whom sat on the jury because plaintiffs had exhausted all peremptory challenges. In a two-to-one decision, this court found the trial court did not abuse its discretion when it denied plaintiffs’ challenges for cause.[3] However, the Louisiana Supreme Court granted writs and remanded the case “for a full opinion reflecting a complete review of the record on the merits, without applying the manifest error rule and without according deference to the jury verdict.”[4] 614 So.2d 1248
In keeping with the supreme court’s mandate, we have painstakingly reviewed this voluminous record. We will now address de novo the issues of whether Exxon and Partex were negligent or strictly liable.
FACTS
At the time of this accident, Williams-McWilliams Company, Inc. (Williams) was working under contract with Exxon to maintain its dock on the Mississippi River. Smith, a heavy equipment operator, was hired by Williams to operate a crane from a barge. When Smith arrived at the Exxon refinery to work on February 28, 1983, his first day on the job, the crane had not arrived. When the crane still had not arrived by lunchtime, Smith’s supervisor, C. Douglas Orillion, decided to have Smith and two other Williams employees, James Williams and James Ballard, load some old timbers onto a flatbed truck using a small machine called a stevedore. The truck in question, a Ford model F-600, was owned by Partex. Terry J. Tarver, Exxon’s mechanical supervisor in charge of the docks, arranged for Partex to provide a “trash truck” and two laborers to drive the truck. Orillion intended for the Partex employees to drive the truck to the Exxon trash dump and unload it after the Williams employees loaded the timbers onto it. The truck arrived during the lunch break and was parked 40 to 60 feet from the timbers. Rather than have the Partex employees remain idle while the truck was being loaded, Tarver assigned them to a cleanup detail on another part of the dock.
During the lunch break, Orillion told the Williams employees to load the timbers onto the truck when they finished lunch. Ballard and James Williams left to get the hooks and stevedore. It is disputed whether Smith took it upon himself to move the truck closer to the timbers or whether he was ordered to do so by Tarver. In any event, when Smith tried to get into the truck, he fell.
*689 There were no eyewitnesses to the fall. Smith testified that it had been misting rain, the running board was muddy, and his feet were wet. He put one foot on the running board of the truck, grasped either the back of the seat or the frame of the truck with his right hand and the armrest on the inside of the door with his left, and started to raise his other foot. The armrest then “broke in half’ and he and the armrest fell to the ground.
However, Smith’s testimony that the armrest broke in half and fell to the ground is controverted by the photographs of the armrest introduced into evidence by plaintiffs. Those photographs show that the padded covering from approximately the rear one-third of the armrest was partially pulled away from the underlying armrest frame. The armrest itself remained bolted to the door, and the torn portion of the outer covering remained attached to the armrest. Tar-ver testified he was standing nearby, maybe within 150 feet, when he heard a noise. He walked toward the truck and saw Smith get up. Tarver also testified that he was present when an Exxon photographer took photographs of the truck’s interior (P-1 through P-3) the next day and that they depict what the door looked like after the accident, i.e., the armrest cover was ripped at one end.
WERE PARTEX AND EXXON NEGLIGENT?
Plaintiffs contend Partex was negligent in failing to properly maintain its truck and in failing to inspect the truck and discover that the armrest was in a “corroded condition.” Plaintiffs further contend Exxon was negligent in failing to have a policy requiring its contractors to conduct regular maintenance and inspection on vehicles used on the Exxon premises.
The truck in question was 13 years old. Mike Parish, Partex’s vice president, testified the truck was mechanically sound and had a current Louisiana inspection sticker at the time of the accident. While its appearance was less than optimal,[5] according to Parish, Orillion, and Tarver it looked like all the other trucks used to haul trash at the Exxon refinery.
Parish testified Partex’s mechanics were instructed to keep their trucks in good working condition. Eugene G. Roe, Jr., Exxon’s maintenance section supervisor at the time of the accident, testified Exxon required all vehicles used in the plant to have a vehicle pass. These passes were issued quarterly. In order to receive the pass, a vehicle must have had a valid license plate and Louisiana inspection sticker and a good exhaust system. Parish stated the Partex trucks were inspected every three months in order to obtain the vehicle passes.
Plaintiffs offered no evidence to show that the particular truck involved in the accident was not subject to these quarterly inspections, nor did they offer a scintilla of evidence as to the appearance of the armrest before the accident. Smith did not inspect the armrest before the accident; he testified that even if he had inspected the armrest before he grabbed it, all he could have seen was the bottom of it. Plaintiffs have not shown that any manner of inspection would have revealed the armrest would not withstand downward pressure being exerted by a 345-pound man.[6]
Furthermore, the photographs and Tar-ver’s testimony belie Smith’s version that the armrest was pulled off the door and ended up on the ground with him. Smith testified the armrest was “designed” to be used to pull oneself into the cab. However, there is no evidence in -the record which shows that even if the armrest were so designed that it could not still be used for that purpose after Smith’s mishap. The photographs lead us to conclude Smith probably grabbed for the armrest without looking, did not put his left hand in the designed opening, and, because of the weather, slipped when he grabbed the armrest cover.
For the foregoing reasons, plaintiffs’ claims sounding in negligence fail for lack of proof.
*690 STRICT LIABILITY
Plaintiffs contend the armrest was defective and that Partex, the owner, is strictly liable under Louisiana Civil Code article 2317. Plaintiffs further contend Exxon is strictly liable because it “borrowed” the defective truck from Partex.
While strict liability eliminates the requirement that a plaintiff show the defendant knew an object in its custody was defective, in order for a plaintiff to prevail he must prove a defect existed. Shook v. Cambridge Mut. Fire Ins. Co., 451 So.2d 1298, 1299 (La.App. 1st Cir.1984), unit denied, 458 So.2d 122 (La.1984). Thus, in this case the plaintiffs must show that a flaw existed in the armrest which posed an unreasonable risk of harm to Smith. See McKinnie v. Department of Transp. & Dev., 426 So.2d 344, 346 (La.App. 2d Cir.), writ denied, 432 So.2d 266 (La.1983). The armrest must have been in “normal use” at the time of the accident, but that term encompasses all reasonably foreseeable uses and misuses of the armrest. See Berry v. Commercial Union Ins. Co., 565 So.2d 487, 494-495 (La.App. 2d Cir.), writ denied, 569 So.2d 959 (La.1990). The mere fact that something unusual occurred is not, in and of itself, proof of a defect for strict liability purposes. Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370, 1375 (La. App. 1st Cir.), writ denied, 401 So.2d 988 (La. 1981).
Plaintiffs contend the armrest was defective because part of the padding ripped off while Smith was attempting to get into the cab of the truck. The only evidence introduced by plaintiffs to support this contention was Smith’s own testimony that the armrest was “designed” to be used to pull oneself into the cab. Smith stated he normally mounts a truck by using the armrest, stating “that’s what the [armrest] is there for, it’s got a hole in it, you know, look at any of them.”
Smith testified he used the steering wheel to pull himself into the truck after his fall. He normally did not use the steering wheel, however, because “you let a man, a big man grab them a few times and you’re going to have a steering wheel flopping all over the place.”
Parish testified he normally gets into this type of truck by stepping on the running board, which is knee high to the average person, and grabbing the steering wheel with his left hand. When questioned by plaintiffs’ attorney regarding whether there was anything wrong with getting into the truck by using the armrest “since there’s a little cutout slot in the door handle even to use the door handle as a method of getting up into a truck,” Parish replied that he supposed each individual would use the method most comfortable to him.
Curiously, the photos show that the portion of the armrest containing the “hole” or “slot,” which plaintiffs contend was designed to be used to pull oneself into the truck, was intact after Smith’s fall. If Smith had his hand in the slot at the time the armrest “broke,” it seems that the portion of the armrest surrounding the slot would have torn, not the rear portion of the armrest. If Smith’s hand was not in the slot, however, but was grasping the rear portion of the armrest, we find this was not a “normal use” of the armrest. Thus, plaintiffs have failed to show the armrest was defective.
Even if plaintiffs had shown the armrest to be defective, they failed to show by a preponderance of the evidence that this “defect” caused Smith’s fall. Considering the photographs which show the padding torn off only the rear portion of the armrest and the slot in the armrest intact, it is just as likely that Smith slipped on the muddy running board before he had a good grasp on the armrest and grabbed the rear portion of the armrest as he fell, as it is that he fell when the padding pulled away from the armrest.[7]
For the foregoing reasons, we find that plaintiffs have failed to carry their burden of proof that defendants Partex and Exxon were either negligent or strictly liable. Thus, the judgment in favor of defendants dismissing plaintiffs’ suit is affirmed at plaintiffs’ cost.
AFFIRMED.

. Smith and his wife will be collectively referred to herein as "plaintiffs.”

. Because this court's original opinion was not published, we will briefly summarize the basis of plaintiffs' assignment of error. The trial court refused to sustain plaintiffs’ challenge for cause of a juror who had worked for Exxon for 23 years and whose son currently worked as a contractor for Exxon. This forced plaintiff to use his final peremptory challenge. The trial court also refused to sustain plaintiffs' challenge to a juror who was a social acquaintance of one of the defendants' attorneys, was a friend of an upper-level Exxon manager, and was employed by a firm whose largest client was Exxon. Since plaintiffs had no more peremptory challenges, this juror was seated.
The dissent cited State v. Smith, 430 So.2d 31, 38 (La.1983), and Dean v. Nunez, 534 So.2d 1282 (La.App. 4th Cir.1988), rev'd, 536 So.2d 1203 (La.1989) (remanded to court of appeal for decision on the merits), for the proposition that a challenge for cause should be granted even where a prospective juror declares impartiality if the juror's testimony on voir dire reveals the existence of facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably implied. Based on the totality of the voir dire, plaintiffs contended, and the dissent agreed, that these jurors should have been excused for cause. Apparently the supreme court agreed.

.Smith v. Partex Constr., 614 So.2d 1248 (La. 1993).

. Mike Parish testified the truck might "not be what you'd want to carry your mother to church in.”

. According to the records of West Feliciana Parish Hospital, Smith weighed 345 pounds on the day of the accident.

. Because of our finding adverse to the plaintiffs on the issue of whether the armrest was defective, we pretermit discussion of whether Exxon borrowed the truck from Partex.