892 So.2d 732 (2005)
Michael TERRAL, Plaintiff-Appellee
v.
LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY and Troyce Mangum, Defendants-Appellants.
No. 39,360-CA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*733 Hubley, Marcotte & Rhodes, by Craig O. Marcotte, Shreveport, Louisiana Farm Bureau Casualty Ins. Co., for Appellant.
W. Brett Cain, Shreveport, for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
STEWART, J.
Appellants, Louisiana Farm Bureau Casualty Insurance Company and Troyce Mangum, seek reversal of the trial court's judgment awarding damages to the plaintiff, Michael Terral, for injuries he suffered when he hit a dog while riding a motorcycle. Specifically, appellants argue that the trial court erred in determining that the dog was owned by Troyce Mangum. Appellants also argue that the trial court erred in allowing lay testimony on the issue of ownership of the dog and in failing to find that plaintiff was at fault in causing the accident. Finding no error in the trial court's judgment, we affirm.

FACTS
On April 10, 2003, Michael Terral and an unnamed passenger were involved in a motorcycle accident while driving on Teal Glen Road in Mooringsport, Louisiana. Mr. Terral sustained injuries in the accident, which occurred when a black dog ran into the path of the motorcycle. Mr. Terral filed suit against Troyce Mangum, the alleged owner of the dog, and Mr. Mangum's insurer, Louisiana Farm Bureau Casualty Insurance Company. Defendants filed an answer denying Mr. Mangum's alleged ownership of the dog and, therefore, liability for Mr. Terral's damages.
The matter was tried on April 8, 2004. Mr. Terral presented the following witnesses to prove that the defendant owned the dog which caused the accident. Officer Jay Duke, a deputy with the Caddo Parish Sheriff's Office, was the first to testify. Duke was the officer dispatched to the accident scene. Officer Duke testified from his report that Mr. Terral stated that he was traveling eastbound at about *734 35 miles per hour on Teal Glen Road on his 1996 Suzuki motorcycle when a dog "ran out from a yard and hit the side of his motorcycle." Neither Mr. Terral nor his passenger could tell Officer Duke whom the dog belonged to, and Officer Duke admitted that he did not contact any other residents in the area regarding the ownership of the dog. Officer Duke observed a dead "medium size" black dog at the accident scene, but he could not remember whether the dog had a collar.
Patricia Bowman testified that she has lived on Teal Glen Road about three lots down from where the accident took place for the last six years. In the time preceding the accident, Bowman had observed a black dog similar to a Labrador. According to Bowman, the dog spent the majority of the time at 7988 Teal Glen Road at the home of her neighbors, "Shannon and Troy." Although the dog was not restrained, Ms. Bowman considered it to be "living"at the defendant's residence. Ms. Bowman had witnessed the female resident of the home feeding and petting the dog. She also testified that the black dog was a nuisance in the neighborhood due to its predilection for chasing vehicles. Ms. Bowman stated that the residents of 7988 Teal Glen Road owned a red chow which, at times, ran loose in the neighborhood. Ms. Bowman admitted that she had not witnessed the accident, but she noticed that the black dog she had previously witnessed at the neighbor's home was lying dead in the road after the accident. She testified that the dog wore a red collar.
Ernie Jacks, another resident living on Teal Glen Road, testified that he had witnessed a 50 to 60 pound black Labrador-type dog spending most of its time at 7988 Teal Glen Road. Though not positive, Jacks believed that the dog wore a red collar. He testified that it spent all of its time on the porch or front yard at 7988 Teal Glen Road. The dog exhibited aggressive behavior charging Mr. Jacks and his wife on various occasions. Jacks testified that he never witnessed who, if anyone, fed the dog and admitted that he had not witnessed the accident nor did he have any first-hand knowledge of whether the dog involved in the accident was the same dog as the one he had observed at 7988 Teal Glen Road.
Keith Barney, a neighbor and friend of the plaintiff's, had also witnessed a 60-pound black dog in the neighborhood prior to the accident and indicated that the dog spent the majority of its time at 7988 Teal Glen Road. He stated that his children had complained of being chased by the dog on numerous occasions while walking to Mr. Terral's home to visit Mr. Terral's son and their friend, Kenneth. Like the witnesses who testified before him, Barney was under the impression that the dog belonged to the residents of 7988 Teal Glen Road. He also testified that Mr. Terral walked to the Barney home after the accident. Barney observed that Mr. Terral was bloody and had sustained road rash. He testified that Mr. Terral blacked out while being attended to by paramedics. Mr. Barney also testified that he saw a dead dog at the scene of the accident and stated that the dog was the same one he had previously observed in the neighborhood. Barney had never noticed whether the dog wore a collar.
Michael Terral testified that he lived around the corner from where the accident occurred on Sundown Drive. On the evening of the accident, he had returned home after work, and he and his girlfriend set off on his motorcycle to Mr. Barney's home. Right after Mr. Terral took a left turn off of Sundown Drive onto Teal Glen Road, a barking red chow ran towards his motorcycle from the left-hand side of the road. In response, Mr. Terral released *735 the accelerator and was veering towards the right edge of the road to avoid the charging dog. While doing so Mr. Terral testified that he continued looking towards his left at the red chow. At that moment, his motorcycle either struck or was struck by something. The impact caused both Mr. Terral and his girlfriend to be thrown from the motorcycle.
When Mr. Terral got off the ground he noticed a black dog lying in the road. The dog was near death. Right after the accident, a blond woman came out of the trailer at 7988 Teal Glen Road asking about the welfare of "her dogs," and of Mr. Terral and his girlfriend. He testified that the black dog was one he had seen in the neighborhood over the past two years and that it spent most of its time at 7988 Teal Glen Road. He claimed that he never saw the black dog approach the motorcycle before the accident, because he was looking at the red chow. He also testified that he lost consciousness shortly after the accident and had no recollection of speaking to any law enforcement officer in the aftermath of the accident.
The defendant, Mr. Mangum, stated that he had lived at 7988 Teal Glen Road for the past four years and that for the majority of the past three years his girlfriend Shannon Callen had resided there with him. He admitted that the couple owned three registered dogs: a red chow, a chihuahua, and a dachshund. He testified that the red chow is 14 years old and has arthritis.
Mr. Mangum admitted that at the time of the accident he did not have a fenced yard and at times he would allow his red chow to run loose and unsupervised. He also admitted that it would "go out on the road." Mr. Mangum recalled seeing a black dog in his yard around the time of the accident but denied that the dog belonged to him. However, he admitted that the dog consumed food on his front porch on a regular basis. He claimed that he put the food out for the chow, but he knew that the black dog ate it as well.
Mr. Mangum stated that he never purchased anything for the black dog, never took it to the veterinarian, never walked it, never let it inside his trailer, and never told anyone that the dog was his. To the contrary, Mr. Mangum stated that he did let his three other dogs into the trailer, took them to the veterinarian, bought things for them, and let them ride in his vehicle.
After Mr. Mangum's testimony, the parties stipulated that the testimony of his girlfriend, Shannon Callen, would mirror that provided by Mr. Mangum.
Glen Penick, Mr. Mangum's neighbor, also testified on his behalf. Mr. Penick stated that he had been Mr. Mangum's across-the-street neighbor for a "little over a year." He testified that he had witnessed a black collarless puppy in the neighborhood preceding the accident, but he did not know who, if anyone, owned the dog. Although the foundation for his testimony is not clear, Mr. Penick indicated that the collarless puppy he had observed roaming the neighborhood was the same one involved in Mr. Terral's motorcycle accident.
After the conclusion of the testimony, the trial court found that Mr. Mangum had in fact been feeding the black dog for a sufficient period of time to have assumed ownership of it and, thus, responsibility for it. On May 26, 2004, the court rendered and signed a judgment in favor of Mr. Terral and against Mr. Mangum and Farm Bureau Casualty Insurance Company for damages totaling $11,717.99. The instant appeal followed.

*736 DISCUSSION
On appeal, defendants assign as error the trial court's determination that the black dog was owned by Mr. Mangum, the trial court's failure to find Mr. Terral at fault in causing the accident, and the trial court's failure to disallow lay testimony regarding the ownership of the black dog.

Applicable Law
The liability of animal owners is regulated by La. C.C. art. 2321, which provides as follows:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
With regard to dog owners, the legislature has retained strict liability, yet defined a three-part test to determine liability. First, the dog must have actually caused the damage to the plaintiff's person or property. Second, the owner must have been able to prevent the damage, but failed to do so. Third, the damage must not have been caused by the injured person's provocation of the dog. If the dog is found to have posed an unreasonable risk of harm, then the owner will be presumed to be at fault and will be held strictly liable for an injury caused by his dog, unless he can show that the injury was due solely to the fault of a third party or to a fortuitous event, or, the plaintiff fails to establish that the injuries did not result from the injured person's provocation of the dog. Pepper v. Triplet, XXXX-XXXX (La.1/21/04), 864 So.2d 181.
Despite the reference to "owners" in La. C.C. art. 2321, the jurisprudence extends liability under the article to persons who harbor dogs through either actual or constructive possession and control of the animal. Thompson v. Sicard, 385 So.2d 334 (La.App. 1st Cir.1980), writ refused, 386 So.2d 355 (La.1980); Tillman v. Cook, 3 So.2d 230 (La.App.Orleans 1941); McCoy v. Lucius, 36,894 (La.App.2d Cir.3/5/03), 839 So.2d 1050, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 344. We note that this jurisprudence is consistent with a dog's classification as a corporeal movable, the ownership of which is presumed to be in the person who possesses same. La. C.C. arts. 471 and 530.

Assignment of Error No. 1
Appellants argue that the trial court erred in determining that Mr. Mangum was liable under La. C.C. art. 2321 for the damage caused by the black dog. Appellants argue that the evidence did not establish that Mr. Mangum was the dog's owner and that the trial court erred in determining that he was. We disagree.
First, we note that the law, as set forth above, does not require that the plaintiff prove that Mr. Mangum is the actual owner of the black dog, but merely that he harbored the dog. Second, whether Mr. Mangum owned and/or harbored the dog is primarily a question of fact and, thus, the trial court's determination in that regard is entitled to great discretion. On questions of fact, especially those involving credibility of witnesses, the trial court will be *737 reversed only for manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Appellants argue that the black dog was an ownerless stray which roamed the neighborhood in which Mr. Mangum lived. As evidence that Mr. Mangum had not assumed possession of the animal, appellants point to his testimony that he did not treat it in the same manner as he treated his three other dogs and that he did not even feed the dog. We find appellants' contentions in this regard to be unpersuasive.
Appellants' argument that Mr. Mangum did not feed the dog in question because the food he placed on his porch was intended for his red chow is a disingenuous splitting of hairs. It is clear from his own testimony that Mr. Mangum repeatedly placed food on his porch with the knowledge that it was being consumed by the black dog. In light of Mr. Mangum's actions and knowledge, we can give no credence to his argument that he did not feed the dog simply because he did not intend to do so.
Nor do we find appellants' argument that the black dog was not treated the same as Mr. Mangum's other dogs dispositive of whether Mr. Mangum had assumed possession, and thus presumptive ownership, of the black dog. Mr. Mangum testified that his three other dogs were registered. He did not elaborate, and this court is not aware of any publically or privately sponsored registry where dog owners can register their dogs for the purpose of establishing ownership. Therefore, we presume "registered" refers to the practice of registering purebred dogs with an organization such as the American Kennel Club. Assuming these dogs are "registered" purebred dogs, the preferential treatment they received over the black dog is not noteworthy and not necessarily indicative of whether Mr. Mangum owned the black dog for purposes of establishing liability.
With one exception, the testimony of the residents of the neighborhood clearly established that a medium-size black dog had taken up residence at the Mangum trailer for approximately the two years preceding the accident and was being fed by the residents therein. They indicated that the dog was unrestrained, as was Mr. Mangum's red chow at times, and would chase cars and neighborhood children. All these witnesses had lived in the area in excess of two years.
The one exception was Mr. Penick, who had only resided in the neighborhood for a maximum of two months at the time of the accident. Mr. Penick recalled seeing a six to eight-month-old collarless black lab puppy roaming the neighborhood. He stated that the dog was not aggressive and was not discernibly owned by anyone in the neighborhood. Mr. Penick's description of the non-aggressive black puppy differed from the description of the black dog given by others. Given the differences in the description of the dog and the trial court's finding that all the testimony was credible, we can only assume the possibility that the dog Mr. Penick observed in the neighborhood was a different dog from the one which had taken up residence at Mr. Mangum's and which was involved in the accident. While we note that Mr. Penick indicated that the black dog he observed was the same black dog involved in the accident, the record bears no foundation for his testimony in that regard. It was not established that he either witnessed the accident or came upon the scene in the immediate aftermath.
Appellants also charge that the testimony was contradictory as to whether the black dog "living" at Mr. Mangum's and involved in the accident wore a collar. After *738 a thorough examination of the witnesses' testimony, we find no such inconsistencies. All those witnesses who had any recollection as to whether the dog living at Mr. Mangum's and/or the dog involved in the accident had on a collar testified that it did. And all those who recalled the color of that collar testified it was red. With the exception of Mr. Penick's testimony which has been addressed, there is no affirmative testimony in the record that the dog "living" at Mr. Mangum's and/or involved in the accident did not wear a collar. While there were witnesses, such as Officer Duke, who could not recall whether the dog involved in the accident had on a collar, their failure to recall is not the equivalent of an assertion that it did not have a collar.
As a corporeal movable, ownership of the black dog can be presumed from possession. We find from the evidence adduced at trial that, at the very least, Mr. Mangum had taken possession of this dog by regularly feeding it over a significant period of time and thus by assuming responsibility for its welfare. That possession is enough to impose liability on Mr. Mangum under La. C.C. art. 2321. Accordingly, after reviewing the record, we find no manifest error in the trial court's finding Mr. Mangum to be the "owner" of the dog involved in Mr. Terral's motorcycle accident for the purposes of imposing liability under La. C.C. art. 2321.

Assignment of Error No. 2
In their second assignment, appellants argue that the trial court erred in not finding Mr. Terral negligent in causing his own injuries. Appellants claim that Mr. Terral's testimony regarding the presence of a red chow just before the accident was a fabrication intended to conceal the fact that he was not keeping a proper lookout while driving his motorcycle.
As evidence of the allegation that Mr. Terral fabricated his version of the accident at trial, appellants point to Mr. Terral's failure to mention the red chow to Officer Duke. They also point to further irregularities in his testimony regarding his erratic recollection of to whom he spoke in the immediate aftermath of the accident, including his failure to recall even the presence of Officer Duke at the scene. We disagree.
In addition to the trial court's statement that it found all the witness testimony to be credible, we detect no evidence in the record that Mr. Terral's testimony was anything but truthful. According to Officer Duke, his accident report indicates that Mr. Terral told him that he was eastbound on Teal Glen Road when a dog ran out from a yard and hit the side of his motorcycle. However, it is undisputed that Mr. Terral and his girlfriend were thrown from the motorcycle and that at some point after the accident Mr. Terral briefly lost consciousness. Given Mr. Terral's state of mind and the fact that the "details" of the report are sketchy at best, we do not believe that the accident report can fairly be said to constitute the totality of the circumstances surrounding the accident.
There is substantial evidence that a red chow resided at Mr. Mangum's trailer and that it was occasionally left unsupervised and unrestrained. Mr. Mangum himself admitted that the red chow would go out on the road when unrestrained. Accordingly, we cannot conclude that the trial court manifestly erred in finding that the accident occurred as described by Mr. Terral on the stand. That being the case, we do not find fault on the part of Mr. Terral for his failure to observe the black dog approaching his motorcycle while he tried to avoid another one of defendant's animals in the roadway.

*739 Assignment of Error No. 3

In their third assignment, appellants argue that the trial court erred in allowing several witnesses to testify as to whom they considered owner of the black dog. Appellants complain that these witnesses were not experts and their testimony as to this issue should have been disallowed. During the testimony of Patricia Bowman, Ernie Jacks, Keith Barney, and Michael Terral, defense counsel objected when questions arose as to their impression of the dog's ownership. The trial judge overruled the objections, and allowed the witnesses to testify.
Generally, a witness not testifying as an expert may not give testimony in the form of opinions or inferences. This rule is subject to the limited exception of La. C.E. art. 701 which provides that a lay witness may testify in the form of opinions or inferences where those opinions or inferences are: (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue. The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence and whether it will be received as "lay" or "expert" testimony. Griffin v. Tenneco Oil Co., 625 So.2d 1090 (La.App. 4th Cir.1993), writ denied, 93-2710 (La.1/7/94), 631 So.2d 449.
In the present case, the witnesses repeatedly testified as to the facts which formed the basis of their inference of ownership of the black dog in the defendant. One after the other, each witness testified that he or she lived in the neighborhood and thus had ample opportunities to observe the black dog living primarily in Mr. Mangum's yard and on his porch. Some testified that the dog had a red collar which would indicate that the dog was not a stray. Because dog ownership is evidenced in large part by possession, perception is often reality. Accordingly, Mr. Mangum's neighbors were well qualified to give opinions as to the ownership of the dog. We find no error in the trial court's ruling on this issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed in all respects, and the costs of this appeal are assessed to the defendants.
AFFIRMED.