996 So.2d 325 (2008)
Jeremy Wayne HOLLAND and Laura Christine Holland, Individually and on Behalf of their Deceased Father, Stephen L. Holland, Plaintiffs-Appellants
v.
Charles TEAGUE and Joyce Teague and XYZ Insurance Company, et al., Defendants-Appellees.
No. 43,496-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
*326 Ivan J. Daigs, for Appellants.
Hubley, Marcotte, Rhodes & Hussey, by Michael S. Hubley, Shreveport, for Appellees.
Before CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
A motorcyclist was killed when he struck a dog on a rural Louisiana highway. His children, individually and on behalf of their father, instituted suit against the defendants who were alleged to have harbored the stray dog. Finding that no material issue of fact existed from which liability might arise, the trial court granted summary judgment in favor of defendants and their liability insurer. The plaintiffs appeal the dismissal of the suit. We affirm.

Facts
At approximately 7:10 p.m. on April 19, 2006, Stephen Holland rode his motorcycle north on U.S. Highway 79 to a point 6.1 miles north of La. Highway 2 in Claiborne Parish, Louisiana, where he encountered a large white dog in his lane of travel. Unable to stop his motorcycle, Holland struck and killed the dog and later died from injuries received from the impact. The speed of the motorcycle, estimated at 55 m.p.h., propelled Holland approximately 173 feet from the point of impact and the animal 114 feet. Louisiana State Troopers Jedd Essmeier and Lane Tuggle were dispatched to the scene and observed Holland and the dog on the northbound shoulder of Hwy. 79. The traffic crash report submitted by Trooper Essmeier included the following statement:
The dog was believed to belong to Charles Teague.... Mr. Teague stated the dog was not his, but was a stray that had wandered into his yard some time ago and he has been feeding it.
The decedent's adult children, Jeremy and Laura Holland, instituted a wrongful death action against Charles Teague, his wife, Joyce, and their insurer, State Farm Fire and Casualty Company, individually and on behalf of their father. The Hollands alleged that the Teagues were "responsible and were in custody and control of one Large Dog that was standing in the middle of U.S. HWY 79," and were negligent in failing to control and maintain a safe place to keep the dog and be attentive to the circumstances surrounding this accident.
After answering the suit with general denials, the Teagues sought summary judgment on the grounds that the dog "was not owned by them, nor was it under their custody, care or control." In support of the summary judgment, the Teagues included an affidavit stating that "Charles Teague knows of his own personal knowledge that the dog involved in the accident was in fact a stray that had roamed the neighborhood for several months before the accident." The Teagues also stated "that all parties in the neighborhood and other friends and acquaintances of both of the undersigned were aware that the dog at issue was a stray and at the time of Stephen L. Holland's accident, no one knew to whom the dog belonged."
*327 The Teagues also included the affidavit of Michael Wayne McDaniels, a first responder, who stated that he "knows the dog well, as it was a stray that had roamed the neighborhood around the scene of the accident for some months before the accident at issue occurred." McDaniels also stated that he had to run the dog away from his home, which is located approximately 250 yards from the Teagues. McDaniels stated that "he knows the Teagues well and knows that they never owned a large white dog." In his affidavit, McDaniels claimed that "the only dog [the Teagues] previously owned was a large black German Shepard, which had died." McDaniels further stated that "the white dog in question had a habit of running back and forth across the roadway of Highway 79 at or near the scene where Mr. Holland's accident occurred."
The deposition of Larry Ware was included in support of the summary judgment. When shown a photograph of the dog after the accident, Ware identified the dog as appearing to belong to his stepdaughter. Ware testified that he and his wife (now separated) lived in a home located about 7 or 8 miles from the Teagues. He recalled that the dog escaped from his pen in early 2006 and that his wife and stepdaughter looked for the dog after it escaped.
In his deposition, State Trooper Lane Tuggle testified that he was the supervising officer on the scene, although Trooper Essmeier arrived at the scene before he did. Tuggle identified that accident report prepared by Essmeier. He recalled that he had spoken with Charles Teague as he pulled out of his driveway. From his conversation with Teague, Trooper Tuggle knew that the dog was a stray. Teague told Tuggle that he fed the dog from "time to time." Trooper Tuggle testified that "[t]here's no leash law in Claiborne Parish and there's no law against your dog running around." He stated that "we try our best to determine ... the origin of the dog or you know, just because it happened there in front of his house, that's why I spoke to him as he pulled out of his driveway." Trooper Tuggle did not talk to anyone else about the dog.
Trooper Essmeier's deposition was also admitted in support of the summary judgment. Trooper Essmeier recalled seeing Charles Teague, but he did not talk to him. Essmeier prepared the traffic crash report and stated that he had received the statement about the dog from Trooper Tuggle. No one claimed the dead dog at the accident scene.
Upon this evidence in support of the motion for summary judgment, the trial court granted judgment dismissing plaintiffs' claims. The plaintiffs now appeal.

Discussion
On the motion for summary judgment, the burden of proof is on the mover. La. C.C.P. art. 966. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more elements essential to plaintiff's claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues of material facts remain. La. C.C.P. art. 966(C)(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Holloway v. Kansas City S. Ry. Co., 43,318, 43,319 (La.App. 2d Cir.8/13/08), 988 So.2d 854; Wells v. Red River Parish Police Jury, 39,445 (La.App. 2d Cir.3/2/05), 895 So.2d 676. If the plaintiff fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Power Marketing Direct, Inc. v. Foster, 05-2023 (La.9/6/06), *328 938 So.2d 662. Appellate review of the grant or denial of summary judgment is de novo. Wells v. Red River Parish Police Jury, supra.
Analysis of Louisiana's tort liability placed upon owners or custodians for defective things or animals begins with Civil Code Article 2317, which provides as follows:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Under this article prior to 1996 and the more specific articles which follow, Louisiana developed its law of strict liability. Despite the legislative amendments of 1996 and the additional new Article 2317.1, which abolished strict liability for defective things, strict liability for the owner of a dog remains part of our law as addressed in Article 2321:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog.
The broad concept of custody of a thing is central to Article 2317. In determining whether a thing is in one's custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002; King v. Louviere, 543 So.2d 1327 (La. 1989). On the other hand, Article 2321's liability apparently rests on ownership of the animal and the legal responsibility of the owner. In contrast, the new Article 2317.1 provides for fault of the "owner or custodian of a thing."
In this case, the Teagues are alleged only to have been "in custody and control" of the dog, not to have owned the dog. It is undisputed that the Teagues never acquired the dog by purchase or otherwise in any manner where they could be said to be its owners. The dog was a stray. Nevertheless, plaintiffs insist that an issue of material fact exists because of the evidence of the Teagues' feeding of the dog. That fact may not be material depending upon the application of Articles 2317 and 2321. Are the Teagues required to be the dog's owners or will custody of the dog suffice for the measure of the strict liability claim against them?
From our review of the jurisprudence of the Louisiana Supreme Court, we have not found any case involving non-ownership of a dog or other animal by a defendant, or more specifically, where a defendant in custody of an animal without ownership was held at fault. In Rozell v. Louisiana Animal Breeders Coop., 434 So.2d 404 (La. 1983), the court found the owners of a bull strictly liable for an accident that occurred when the bull was in the custody of Louisiana State University Dairy Improvement Center. In considering whether the defendants could escape liability by entrusting the animal to the custody of another, the court said:

*329 One who entrusts his animal to the care of another is still the owner. Under Article 2321, he remains liable for damages inflicted by that animal. Ownership alone is the basis of liability.... By entrusting the animal to another custodian, the owner does not escape responsibility. As to damages inflicted by that animal, the custodian is a third person for whom the owner is answerable. LSA-C.C. art. 2317 [footnote omitted].
Id. at 408. In footnote 9 at the end of the above quote, the court said:
This does not preclude any independent cause of action against one who has an animal, a "thing", in his custody. LSA-C.C. art. 2317.
The Rozell statements therefore indicate that both Article 2317 (custody) and Article 2321 (ownership) may apply to impose strict liability upon a defendant with sufficient control or ownership of the dog.
The most recent case of our supreme court is Pepper v. Triplet, 03-0619 (La.1/21/04), 864 So.2d 181. The case interprets Article 2321 after its amendment in 1996, but clearly involved a claim against a dog owner. In holding that the "unreasonable risk of harm" criterion still applies for the measure of strict liability for dog-related injuries, the court observed:
Given that Article 2317 and the first clause of former Article 2321, now the first sentence of revised Article 2321, seemingly impose liability without fault in all cases upon the owner or guardian of the defective thing or animal, the Loescher [v. Parr, 324 So.2d 441 (La. 1975)] and Boyer [v. Seal, 553 So.2d 827 (La.1989)] cases effectively represented an attempt to limit the owner or guardian's strict liability under the rationale that the owner should not be required to insure against all injury however small the risk might be.
This court and other Louisiana appellate courts have addressed instances where the defendant was not the owner of the dog. Terral v. Louisiana Farm Bureau Cas. Ins. Co., 39,360 (La.App. 2d Cir.1/26/05), 892 So.2d 732; Thompson v. Sicard, 385 So.2d 334 (La.App. 1st Cir.1980), writ denied, 386 So.2d 355 (La.1980); Tillman v. Cook, 3 So.2d 230 (La.App.Orleans 1941). Without completely addressing the possible limitation imposed by the ownership requirement of Article 2321, and with no consideration of employing the concept of garde under Article 2317, these cases hold that strict liability may extend to persons who harbor dogs through possession and control of the animal.
Significantly, our ruling in Terral also briefly noted the Civil Code's presumption of ownership of one who possesses a corporeal movable. A domestic animal is corporeal movable property. The code articles of significance in this case concerning a stray dog are the following:
La. C.C. art. 3419
One who finds a corporeal movable that has been lost is bound to make a diligent effort to locate its owner or possessor and to return the thing to him.
If a diligent effort is made and the owner is not found within three years, the finder acquires ownership.
La. C.C. art. 530
The possessor of a corporeal movable is presumed to be its owner.
La. C.C. art. 3423
A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established.
The first of these articles governs the relationship between one who finds a lost animal and the true owner of the animal. La. C.C. art. 3419. After three years, the *330 possessor may acquire ownership under our law of "occupancy" vis-a-vis the former owner who lost the animal. Nevertheless, as to third parties, the possessor of the animal is considered provisionally as owner once possession is established. This principle entitled the possessor of a stray cat in Peloquin v. Calcasieu Parish Police Jury, 367 So.2d 1246 (La.App. 3d Cir. 1979), to sue for the destruction of the cat caused by the defendant.
Regarding the right of possession, the Civil Code states that "[p]ossession is the detention or enjoyment of a corporeal thing." La. C.C. art. 3421. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. C.C. art. 3424. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425.
Under these principles, a party may take possession of a stray animal and be considered provisionally as owner of the animal. The factual test of one's possessory right over a stray animal coincidently corresponds closely with the analysis for garde or custody of a thing under Article 2317. Thus, whether both Article 2317 (garde) and Article 2321 (ownership) apply, or only Article 2321, the fact that the Teagues were not the owners of this stray dog does not mean that their relationship as possessors of the animal may not otherwise give rise to strict liability.
This court in Terral, supra, found that with the right of possession of the animal and provisional ownership, the defendant also bears the responsibility as an owner for strict liability imposed under Article 2321. The body of facts revealing that the defendants in Terral had taken possession of the animal was expressed by this court as follows:
With one exception, the testimony of the residents of the neighborhood clearly established that a medium-size black dog had taken up residence at the Mangum trailer for approximately the two years preceding the accident and was being fed by the residents therein. They indicated that the dog was unrestrained, as was Mr. Mangum's red chow at times, and would chase cars and neighborhood children.
Id. at 737.
Accordingly, although the Teagues were clearly not the owners of this stray dog, which apparently had been lost for a brief period of time, the plaintiffs might establish that the Teagues had taken possession of the animal so that the strict liability of Article 2321 could apply. Nevertheless, we do not find any implication from the Teagues' mere feeding of this stray animal to demonstrate that a genuine issue of material fact exists as to their possession of the animal. There is nothing to show the Teagues' detention of the animal since the defendants' evidence suggested the dog freely roamed the rural area around the Teagues' home. Whether the Teagues enjoyed the animal as a pet is not shown. Their intention to take the animal under their control so as to possess the dog as its owners may not be inferred by feeding the stray animal in this particular rural setting, as described by the defendants' evidence in support of summary judgment.
It was therefore plaintiffs' burden to present evidence in opposition to the motion for summary judgment demonstrating factual support sufficient to establish they will be able to demonstrate at trial all of the elements essential to show the Teagues' possession and control of the animal. While we are mindful that the weight of the evidence is not an appropriate consideration for the court in addressing a motion for summary judgment, even the circumstantial *331 implications of the feeding of this admitted stray animal do not provide any weight for many of the essential elements necessary to establish the Teagues' possession of the dog.
Finally, despite argument of counsel concerning the existence of a duty for the Teagues to report the stray animal to the parish governing authorities, we find no such general tort duty and, further, do not find unreasonable any failure to act on their part. The issue of duty under Louisiana tort analysis is a legal question for the court to decide. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229. There is no program in the parish to impound stray animals. Therefore, no cause of action for negligence under La. C.C. art. 2315 is recognized.

Conclusion
For the foregoing reasons, we affirm the trial court's dismissal of the suit. Costs of this appeal are assessed against the Hollands.
AFFIRMED.